### VARICK and others *vs.* BRIGGS and others.

Declarations of a person under whom one of the parties in the suit claims title, by a conveyance made subsequent to the declarations, may be given in evidence by the adverse party, to show that a conveyance, under which such adverse party claims title to the same premises, had been duly executed and had been fraudulently surrendered to the grantor and destroyed.

If a purchaser with notice of a prior unregistered deed, or other claim upon real estate, afterwards conveys the same to a subsequent bona fide purchaser who has no such notice, the latter is entitled to protection against the prior equitable claim to the property.

And a purchaser with notice, from a prior purchaser who was entitled to protection as a bona fide purchaser without notice, is himself entitled to protection against the previous equitable claim which was invalid as against his grantor.

A statute requiring all deeds of real estate executed previous to the passing of the statute, to be recorded within a limited period, and declaring them, if not so recorded, to be invalid as to subsequent bona fide purchasers, is binding upon the grantees of such deeds as were in existence and in a situation to be recorded subsequent to the passing of the act and within the time prescribed.

But a retrospective statute, the immediate and necessary effect of which is to destroy or materially impair a previous vested right, under a conveyance or contract made before the passage of such statute, is inoperative and void as to such vested right.

In giving a construction to a statute, such an interpretation should be given to the language used to express the intention of the legislature as will,

1837.

Varick
v.
Briggs.

if possible, make the provisions of the statute consistent with reason and justice.

Where a party who has previously conveyed his title to land, again conveys the same land to another with warranty, who afterwards mortgages the premises, the mortgagee is entitled to the benefit of the covenants of warranty in the deed, so far as is necessary to secure the payment of the mortgage debt; the mortgage to that extent being an assignment of the covenants, which run with the land.

March 7.

THIS was an appeal from a decree of the vice chancellor of the fourth circuit. In July, 1801, John Tibbitts was the owner of 9600 acres of land in the town of Lisbon, in that part of the county of Oneida which is now the county of St. Lawrence. On the 9th of November, 1810, he deeded to Wesson Briggs, whose first wife was a daughter of Tibbits, lot No. 3 of the subdivisions of that tract, containing 1000 acres, with covenants of seizin and warranty. This deed was duly recorded a few days after its execution. And in February, 1822, Briggs being in possession of the premises as the ostensible owner thereof, he and his second wife mortgaged the same to Richard Varick for $3000 and interest; which mortgage was also duly recorded. Colonel Varick died in 1831, and in the month of February of the next year Briggs also died, leaving five sons, the children of his first wife, his heirs at law. The bill in this cause was filed in 1832, by the executors of Varick, to foreclose the mortgage; and the widow and heirs of Briggs together with several subsequent incumbrancers were made parties defendants. The children of Briggs answered the bill, and it was taken as confessed against the widow and the other defendants. By the answer the giving of the mortgage was admitted; but these defendants denied that their father was seized of the premises in fee, or that he had any thing more than a life estate as tenant by the curtesy at the time of the execution of the mortgage. On the contrary, they alleged that their grandfather, John Tibbitts, being the owner of the premises, in July, 1801, conveyed the same, except 200 acres thereof, to Mrs. Briggs, their mother, by deed of gift; he being then the owner of a large real and personal estate and wholly unembarrassed; that their father and mother being dissatisfied because he had not conveyed as

much land to Mrs. Briggs as he had given to some of his other children, that deed was given up in August, 1802, and John Tibbitts then gave to Mrs. Briggs a new conveyance in fee for the whole 1000 acres; that their mother died seized of the whole lot in the spring of 1810, by which event the title to the premises came to them as her heirs at law, subject to the life estate of their father therein as tenant by the curtesy; and that in the fall of the same year while they were all minors and incompetent to protect their rights, their father persuaded John Tibbitts to take back the conveyance which was given to their mother in 1802 and to give him a new deed of the premises in his own name.

A replication was filed to the answer, and parol evidence was given of the existence and contents of the two deeds from John Tibbitts to his daughter Mrs. Briggs; they not being found among the papers of Tibbitts, who died in 1817, or among the papers of Briggs, and neither of them having been recorded. The cause was heard upon pleadings and proofs as to the defendants who had answered. The vice chancellor decided that the deed to Mrs. Briggs referred to in the answer of the defendants was fraudulent and void as against the complainants, and that their mortgage was a valid and subsisting lien upon the premises. And upon the coming in of the master's report of the amount due, the usual decree for a foreclosure and sale was entered. From this decision the defendants, who were the heirs at law of Mrs. Briggs, appealed to the chancellor.

*D. Cady*, for the appellants. The proof of the loss or destruction of the deeds to Polly Briggs was sufficient to authorize evidence of their execution and contents. The declarations of Wesson Briggs were evidence against the complainant. Briggs at the time of making the declarations was in possession. They were in relation to his title, and the complainant claims under him. (4 *John. R.* 234.) The question of notice does not arise in this case, unless it be first shown that the deeds to Polly Briggs are to be regarded as fraudulent because not recorded.

The deeds to Polly Briggs are not within the spirit and meaning of the act of 12th April, 1813, (1 *Rev. Laws*, 270 ;) and the omission to record them did not therefore render them fraudulent and void as against the complainant. When the deeds were executed, there was no law in existence requiring them to be recorded. The act of 1813, as to these deeds, was unconstitutional. The legislature had no power to require them to be recorded under the penalty of forfeiture of the estate conveyed by them. If the deeds were lost, it was impossible to record them. No act of the legislature can be supposed to require an impossibility. The loss or destruction of the deeds did not impair the title of the grantee or of the heirs at law. (19 *John. R.* 82, 3. 20 *Id.* 479.) Many cases within the letter are not within the spirit of a statute. (4 *Bac. Ab.* 635. *pl.* 12.) A statute against common right or reason, or repugnant or impossible to be performed, is void. (*Idem*, 648, *pl.* 42.)

*D. Wager, & C. A. Mann*, for the respondents. All the testimony in relation to the execution and contents of the deeds to Polly Briggs should be expunged. The loss or destruction of these deeds was not sufficiently proved, to entitle the defendants to give evidence as to their execution or contents. (16 *John. Rep.* 193.) The testimony as to the conversations of Wesson Briggs and John Tibbitts is merely hearsay and should be expunged. The complainant was neither a party nor privy to these conversations, and cannot therefore be bound by them. The complainant took his mortgage without any knowledge of the transactions between the mortgagor and Tibbitts, or of the prior conveyance to Polly Briggs ; his lien cannot therefore be impaired. The complainant comes within the rule, that a person purchasing without notice from one who has notice, shall be equally protected as if no notice ever existed. (1 *John. R.* 573, 4. 2 *Vernon*, 386.) Varick's mortgage was recorded prior to any knowledge of the deed to Polly Briggs, and the mortgagor at the time of the execution of the mortgage was in possession under a perfect valid title. The complainant is to be regarded as a subsequent bona fide purcha-

1837.

ter for a valuable consideration without notice. (14 *John. R.* 407.) Besides, the complainant comes within the provisions of and is protected by the registry act. (1 *Rev. Laws,* 370, § 4.)

THE CHANCELLOR. The first question presented by this case is as to the right of the defendants to give in evidence the declarations of John Tibbitts and Wesson Briggs as to the giving up the alleged deed of 1802. The declarations of Tibbitts, after he had conveyed to Briggs in 1810 with warranty, are not admissible in evidence for any purpose whatever, as against a person claiming title under that conveyance. The declarations of Briggs, however, which were made previous to the giving of the mortgage to Varick, and while he was in possession claiming title to the premises under the deed of 1810, are competent evidence against any person claiming under or through him by a subsequent conveyance, to show that the premises had been previously conveyed to his wife, and to show what had become of her deed. (*Corbin* v. *Jackson, ex dem. Garnsey,* 14 *Wend. Rep.* 619.) In this case the declarations of Briggs, when taken in connection with the testimony of Elisha Tibbitts and of the subscribing witness to the deed of 1810, establish the fact that there was a deed from J. Tibbitts to Mrs. Briggs for the whole lot in 1802, and which deed was either destroyed at the time the new deed was given in 1810, or was delivered up to Tibbitts to be cancelled. And the testimony of Conant and wife and of the widow of Briggs was sufficient evidence of the loss or destruction to authorize the introduction of parol proof of the existence and contents of both deeds to Mrs. Briggs. The contents of the first deed are established by the testimony of two witnesses, and its precise date is ascertained by a reference to the deed to Elisha Tibbitts which was executed at the same time. The date of the other deed becomes material in reference to the recording acts; and I shall have occasion to advert to the testimony on that subject more particularly hereafter.

The next question that presents itself is as to the effect of the recording acts upon the rights of the parties under

these several conveyances. The counsel for the defendant supposes that at the date of the deed of July, 1801, the premises were in the county of Clinton, which was not a recording county. But by a reference to the statutes, it will be found that at the date of that deed the premises were still in the county of Oneida, and that it was necessary to have the deed recorded agreeaby to the act of April, 1798, to protect the title against subsequent purchasers and mortgagees. The revised act of 1801 for dividing the state into counties was passed the 3d of April in that year; and by that act, what is now the county of St. Lawrence was taken from Oneida and annexed to Clinton, which was not a recording county. (2 *R. L. of* 1801, *p.* 5.) The revised act concerning the proof and recording of deeds was passed on the 6th of April, 1801. And the counsel on both sides appear to have supposed that these acts took effect from their date, and were to control the operation of the conveyance executed in July of the same year. But by the general repealing act of the 8th of April, 1801, (1 *R. L.* 619,) the revised acts were not to take effect or be in force until the first of October, and the repeal of the former statutes was not to affect any act done, right accrued, &c. previous to that time. The decree of the vice chancellor was therefore right in declaring the deed of July, 1801, fraudulent and void as against Varick's mortgage; as that deed was not recorded before the recording of the deed of 1810, under which the mortgagee claimed, as required by the act of April, 1798. The fact that Briggs had notice of the unrecorded deed of July, 1801, at the time he took the subsequent deed to himself, does not deprive the complainants of the character of bona fide mortgagees claiming under the recorded deed of November, 1810. At the time Col. Varick took his mortgage, in 1822, Briggs had a recorded title to the premises which was apparently valid; and as there was no prior conveyance on record from J. Tibbitts which was inconsistent with that record title, Varick was not bound to inquire whether there had been any such conveyance from Tibbitts previous to October, 1801, and while the lot continued within the recording county of Oneida.

1837.

Varick
v.
Briggs.

For if a purchaser who has notice of a prior unregistered deed, or of a fraud or trust or any other previous claim upon the estate purchased by him, afterwards conveys or mortgages the property to another who has no such notice either actual or constructive, the latter is entitled to protection as a bona fide purchaser or mortgagee. (*Ferrars* v. *Cheny,* 2 *Vern. Rep.* 384. *Jackson* v. *Given,* 8 *Johns. Rep.* 137.) And the rule is the same where a purchaser without notice afterwards conveys to another who has notice; for otherwise a bona fide purchaser might be deprived of the power of selling his property for its full value. (*See Bennett* v. *Walker,* 1 *West's Rep.* 130; *Jackson* v. *M'Chesney.* 7 *Cowen's Rep.* 360.)

At the time of the giving of the deed of 1802 the premises were in the county of St. Lawrence, which was taken from Clinton and erected into a new county by the act of the third of March, 1802. (3 *Webster's ed. of Laws, p.* 5.) If the act of April, 1798, which in terms applied to all lands situate in the county of Oneida at the time of passing that act, had not been repealed, as to all future conveyances of lands in the now county of St. Lawrence, at the time that tract of country was taken from Oneida and annexed to Clinton, it might very reasonably have been contended that deeds executed after the first of October, 1801, of lands situated in that part of Clinton county, must still be recorded in the clerk's office of the county where such lands were situated at the time of the execution or recording of such conveyances, in order to render them valid as against subsequent purchasers and mortgagees. And such I believe is the construction which has been given to the recording acts, where a recording county has been divided without making any new provision as to the recording of future conveyances. But as the act of 1798 was repealed on the first of October, 1801, and the new recording act, which was substituted in the place thereof as to all future conveyances, only applied to the county of Oneida as organized by the act of the 3d of March, 1801, there was no recording act which was applicable to any conveyances of the premises in question, except mortgages, between the first

of October, 1801, and the passage of the act of April 10th, 1805. (4 *Webster's ed. of Laws*, 301.) By the latter act all the provisions of the 4th section of the recording act of 1801 was extended to the county of St. Lawrence; and all conveyances of lands in that county, made after the first day of October, 1802, were required to be acknowledged, proved and recorded before the first of January then next, in the manner directed in such fourth section. As this act allowed a reasonable time for the recording of conveyances which had then been given, there cannot be any constitutional objection as to its validity in reference to deeds that were then in existence, and which the grantees in such deeds, or those claiming under them, might have procured to be recorded by the exercise of reasonable diligence within the prescribed period. And the fair construction of that act is, that those deeds to which it refers would be fraudulent and void as against subsequent purchasers and mortgagees, if not so recorded, unless they had been destroyed or lost previous to the passing of the act; or unless a compliance with the directions of the act was impracticable for some other reason. The provisions of the act of 1805 were probably intended to cover the whole period between the time when the revised laws of 1801 went into operation, and the time of the passage of that act ; so as to place the titles of lands in that county in the same situation as if they had continued to be in a recording county from the first of February, 1799, when the recording act of 1798 first went into effect as to lands then in the county of Oneida. But by some inadvertence the act of 1805 was made to refer to the first of October, 1802, instead of the first of October of the previous year when the revised laws went into effect. One entire year was therefore left unprovided for by that act. Hence it becomes important to ascertain whether the last deed to Mrs. Briggs was executed during that period ; for if it was executed after the first of October, 1802, there is no excuse for a non-compliance with the requirements of the act of 1805, as the grantee was alive and the deed was in existence for several years after the passage of that act.

Elisha Tibbitts, who drew the deed of 1802, and swears positively to its execution and delivery, says it was done in the month of July or August of that year as near as he can recollect. This of itself would not be sufficiently certain as to time, in a case where the defendants are proving the execution of a lost instrument, to show that it might not have been a month or six weeks later; which would bring the deed within the provisions of the act of 1805. But there are some circumstances testified to, which settle it beyond a reasonable doubt that the deed must have been executed previous to the month of October. B. Pierce swears that the new deed was given, and the old one delivered up when Benjamin Tibbitts, who resided in Troy, was at Lisbon; at which time deeds from John Tibbitts to some other members of his family were also executed. And Mrs. Conant, one of the daughters who then lived in Troy, testifies that her brother, Benjamin Tibbitts, brought her deed from her father and delivered it to her, on his return from St. Lawrence, about the first of September, 1802; which deed was made an exhibit before the examiner. She also swears that Benjamin Tibbitts died on the 11th of September in the same year. For these reasons I think the deed of 1802 to Mrs. Briggs is taken out of the operation of any recording act which was in existence previous to November, 1810, when it was given up or destroyed by the father of the defendants during their minority, and after their right to the land as heirs of their mother had become vested by her death. The mortgage to Varick, therefore, covered nothing but the life estate of their father as tenant by the curtesy, and a claim against the estate of John Tibbitts, under the covenants of warranty contained in the deed of 1810, (of which covenants the mortgage was an assignment, so far as was necessary for the security of the mortgage debt,) provided the title of the defendants is not overreached by the retrospective operation of the 4th section of the revised act of 1813 concerning deeds. (1 *R. L.* 370.) That question I shall next proceed to consider.

The reasonable presumption from the facts in this case is, that the deed of 1802 was destroyed at the time of the

execution of the new deed to Briggs; so that it was impossible to record it at the time of the revision of the laws in 1813. For Briggs himself could not have obtained the benefit of the new deed, so as to enable him to defraud his children out of the land to which they were entitled as the heirs of their mother, if that deed had been permitted to remain in existence so that it might come to their possession at some future period. And as Tibbitts conveyed to Briggs with full covenants of warranty and of seizin, it was for his interest also to destroy the evidence of the previous conveyance to his daughter; otherwise he or his estate might be made liable to Briggs or his grantees on the covenants in the deed of November, 1810. And this presumption that the deed of 1802 was destroyed when the new deed was given, is much strengthened by the fact that it was never seen or talked of in the family of Briggs, nor was it found among his papers after his death; neither was there any trace of it among the papers of Tibbitts at his death, a very few years after the new deed to Briggs was executed and recorded. Even if the 4th section of the act of 1813 was intended to reach such a case, I have no hesitation in saying that a retrospective statute, the immediate and necessary effect of which must be to destroy or materially impair a vested right under a previous contract or conveyance, is inoperative and void. In construing statutes, however, it is not reasonable to presume that the legislature intended to violate a settled principle of natural justice or to destroy a vested title to property. Courts, therefore, in construing statutes will always endeavor to give such an interpretation to the language used as to make it consistent with reason and justice. The section of the act of 1813, now under consideration, was undoubtedly framed by the revisers upon the supposition that all conveyances of lands which were then within the limits of any of the counties mentioned in that section, had at all times been subject to the recording laws, subsequent to February, 1799. Indeed, it appears by their table of counties that they acted under the erroneous impression that St. Lawrence county was erected from Oneida. Their attention, therefore, was not called to the

fact that the territory of which St. Lawrence was compo-
sed was annexed to the county of Clinton for about five
months, previous to its being set off into a seperate county;
by which, for a time, it was taken out of the operation of
the recording act, which would have continued to apply to
it if it had been taken immediately from Oneida and form-
ed into a new county. (*See* 2 *R. L. of* 1813, *p.* 45.) This
section, therefore, was not intended to be retrospective in
its operation, but only to cover the case ·of deeds that
ought to have been recorded under the previous laws and
which had not then been recorded. But as the deed in
question was not required to be recorded by any previous
law, and was not in existence at the time of the passing of
the act of April, 1813, it was in no way affected by the pro-
vision of that act, as such a case was never contemplated
by the legislature. They certainly could not have intended
to declare the deed under which these defendants had
derived their title to be fraudulent and void, merely because
they had not done an act which they were not bound to do
previous to that time, and which it was then impossible for
them to do afterwards. 1 am, therefore, obliged to declare
that the deed of 1802 conveyed a valid title to Mrs. Briggs
of the premises in question; which title was not divested by
the subsequent conveyance to Briggs himself; and that this
deed of 1802 is not fraudulent and void as against the com-
plainants. The decree appealed from must therefore be
reversed.

A general decree, dismissing the bill against the defend-
ants, who are heirs of their father as well as of the mother,
might deprive the complainants of their remedy, if they
have any, against the personal representatives or the heirs
of Tibbitts, under the covenants of warranty in the deed of
1810. The decree must be so framed, therefore, if the com-
plainants wish it, as to protect all their rights, and at the
same time to give to the defendants the full benefit of their
title as heirs at law of their mother. This may probably
be done by a decree of strict foreclosure as to all rights and
interests acquired under the deed of 1810, and declaring
the rights of the defendants to the land itself under the pre-

vious conveyance. And as the complainants are litigating in good faith in their representative character, in a case of very great hardship as respects the estate which they represent, they are not to be charged with the costs of the adverse party.