## REYNOLDS *vs.* REYNOLDS.

Since the revision of the laws in 1830, where a husband dies, his widow is entitled to dower in the lands whereof he was seised, notwithstanding that previous to 1830, for many years she lived in open *adultery* away from him, if a divorce was not obtained. Had the husband died previous to 1830, she would have been barred under the *act concerning dower*, passed in 1787, notwithstanding a divorce had not been obtained ; but that act having been repealed, the widow now by the *revised statutes* is not barred, unless the marriage contract has been dissolved by a *divorce*.

Previous to the *death* of the husband, the wife had no *right*, *interest* or *estate* in the lands of her husband which could be *forfeited* by the *adultery ;* and therefore, the act of 1787 had no operation in barring her dower.

THIS was an action of *ejectment for dower*, tried at the Essex circuit in January, 1839, before the Hon. JOHN WILLARD, one of the circuit judges.

New-York, May, 1840.—Reynolds v. Reynolds.

The case, as the plaintiff offered to prove it, was this : She was married to *Newell Reynolds* in 1800, and they lived together as husband and wife for about two years, and until after they had one child, which is now living. In 1802 *the plaintiff left her husband, for the rea-  ° [ *194 ] son that he was guilty of criminal intercourse with other females in his dwelling house, and treated her in other respects with so much neglect, ill temper and cruelty, as rendered it proper and necessary for her to leave him. Within two years after the plaintiff left, Reynolds took the defendant into his house, pretending to have married her, and continued to cohabit with her as a wife until the time of his death in 1837, having a large family of children by her. About the year 1805, and about one year after Reynolds commenced cohabiting with the defendant, the plaintiff, supposing herself absolved from the marriage contract, married one *Haskins*, and continued to live with him as his wife about twenty years, when he died. All the parties during the whole time lived within a few miles of each other. Reynolds, the husband, was seized and possessed of the land in question after his marriage with the plaintiff, and lived on it for many years, before and at the time of of his death in 1837. Since that time, the land has been occupied by the defendant. The defendant insisted that these facts, if proved, would not authorize a verdict for the plaintiff, because she had forfeited her claim to dower by separating from her husband, and living in adultery with another man. The judge so ruled, and nonsuited the plaintiff, who excepted, and now moves for a new trial.

*G. Stow*, for plaintiff.

*A. C. Hand*, for defendant.

*By the Court*, BRONSON, J. Adultery in the wife was, at the common law, no bar to her claim for dower, not even where a divorce followed, unless it was a divorce *a vinculo*. 2 *Inst.* 435. *Co. Litt.* 32, (a), *and note* 194. 2 *Black. Comm.* 130. 4 *Kent's Comm.* 52, *note* (c), 54. But by the statute Westm. second, 13 Ed. I., ch. 34, it was enacted, that " if a wife willingly leave her husband and go away, and continue with her advtouterer, she shall be barred forever of action to demand her dower that she ought to *have of her husband's lands, if she be  [ *195 ] convicted thereupon, except that her husband willingly, and without coercion of the church, reconcile her, and suffer her to dwell with him ; in which case, she shall be restored to her action." 2 *Inst.* 433. This statute was, in substance, re-enacted in this state in 1787, 1 *Greenl.* 294, § 7 ; and it remained in force down to the revision of the laws in · 1830. 1 *R. L. of* 1801, *p.* 53, and 1 *R. L.* 58. Under this statute, there can be

little doubt that the plaintiff forfeited her claim to dower, by living in adul-' tery with Haskins, without being afterwards reconciled to her husband.

The provocation which she had to depart will not aid her. The words of the statute Westm. 2, are, " if a wife *willingly* leave her husband, *and go*, *away, and continue,*" &c. Lord Coke, in his commentary, says : " Albeit the words of this branch be in the conjunctive, yet if the woman be taken away not *sponte*, but against her will, but after consent, and remain with the adulterer without being reconciled, &c. she shall lose her dower ; for the cause of the bar of her dower is, *not the manner of her going away, but the remaining with the adulterer* in avowtry, without reconciliation ;" and so if she go away with her husband's consent and agreement with another man, and afterwards commit adultery, she shall be barred. And Coke cites what he calls " a rare and strange case," from the parliament roll, 30 Ed. I., which was only seventeen years after the statute was passed. In that case, John de Camoys, by deed, delivered and and committed his wife Margaret to the Lord William Paynel, and did grant and confirm that the said Margaret should be and remain with said Lord William according to his will. After the death of her husband, the wife demanded her dower, but it was adjudged against her, on the ground of the adultery with Paynel. 2 *Inst.* 435. *Dyer,* 107 (*a*), *note. Bacon's Abr. Dower, F.* In *Coot* v. *Berty,* 12 *Mod.* 232, in dower, the defendant pleaded the elopement of the wife ; she replied, that the husband had bargained and sold her to the adulterer ; but the replication was held bad. In the recent case of *Hethrington* v. *Graham,* 6 *Bing.* 135, it was held that adultery was a bar, [ *196 ] *although committed after the husband and wife had separated by mutual consent. *Tindal,* Ch. J. concludes a review of the authorities, by saying that they " place the forfeiture of the dower upon the fact of a *living from the husband in adultery, and not upon the circumstances of the elopement.*" I do not find that this doctrine has been departed from.

Although the plaintiff had good cause for leaving her husband, yet the subsequent adultery, had the husband died while the act of 1787 remained in force, would clearly have barred this action for dower. The effect of the present statute upon her claim remains to be considered.

In 1830, the act of 1787 was repealed and after declaring that a widow shall be entitled to dower, a new provision was made in the following words : " In case of divorce dissolving the marriage contract, for the misconduct, of the wife, she shall not be endowed." 1 *R. S.* 741, § 8. Under this statute the adultery is not enough. It must be followed by a divorce dissolving the marriage contract. This has brought us back to the common law, as it stood before the statute of 13 Ed. I., for as we have already seen, adultery did not work a forfeiture at the common law. And as to a divorce *a vinculo,*

that always put and end to the claim of dower ; for although it was not necessary that the seisin of the husband should continue during the coverture, it was necessary that the marriage should continue until the death of the husband. *Co. Litt.* 32, (*a.*) 2 *Bl. Comm.* 130. 2 *Kent's Comm.* 52, (*c,*) *and p.* 54. The statute bar for the mere act of adultery, which had existed for more than five centuries and a half, was blotted out by the repeal of the act of 1787—the British statutes not being in force in this state ; and the 8th section of the act of 1830 has added nothing to the law as it would have stood had the legislature stopped with a simple repeal of the act of 1787.

How, then, stands this case ? Prior to 1830, the plaintiff was under a statute disability, and had her husband died at that time she could not have taken dower. But seven years before the death of her husband, the disability was removed by the repeal of the statute—there was no longer any bar, and I am unable to discover any valid objection *to [ *197 ] her claim. She is able to establish all the elements of a perfect title to dower, to wit, a lawful marriage, and the seisin and death of the husband. The objection urged against her is, there was a time when if your husband had died, you would not have been entitled to dower. To this she may well answer, true it is, there was such a time, but it has gone by, and and when my husband died, there was no legal bar in my way. The law says, a widow shall be endowed, unless there has been a divorce for her misconduct ; there has been no such divorce in my case, and I am a widow and claim my right. Her argument rests, I think, on a solid foundation.

It is not very important whether we regard the late revision of the statutes as working a simple repeal of the act of 1787, and thus reviving the ancient common law ; or whether we regard it as a repeal, accompanied by a new provision : for in either case, the mere fact of living in adultery ceased to be a bar to dower in 1830, and the husband did not die until 1837. There had been no divorce, and there was at that time no obstacle in the way of the plaintiff's claim.

The defendant's answer to this view of the case is, that the plaintiff had a *right, interest* or *estate* in the land in the life time of the husband, which was forfeited by the adultery prior to 1830 ; and we are referred to the saving clauses in the repealing statute. 2 *R. S.* 779, § 5, 6. The argument assumes what cannot be maintained. While the husband lives, the wife has no right, interest or estate in the land. She has nothing but a mere capacity to take, in the event of her surviving her husband—she is *dowable.* It is not until she becomes a widow, that she is entitled to dower. It was the *widow,* not the *wife,* who was provided for by *magna charta.* 9. *Hen. III. ch.* 7. 2 *Inst.* 16. And so it has always been in our statutes concerning dower. 1 *R. L.* 56, *ch.* 4. 1 *R. S.* 740. The legal assurance that the

wife shall have dower if she become a widow, is sometimes spoken of, through the imperfection of language, as though it were a present estate or interest in the land ; but, in truth, it is not so ; she has no right, until after the death of her *husband. In *Lampet's case,* 10 *Co.* 49, Lord Coke, although he was endeavoring to prove that the wife might be barred by a fine, was forced to admit that, " notwithstanding her husband is seized in fee, and the mariage is lawful, yet she has but a *possibility* of dower till the death of her husband."

It was this difficulty that puzzled the old lawyers. Although they were resolved that a fine levied by the husband and wife, or by the husband alone in certain cases, should bar the widow of her dower, they were at a loss to discover any good reason for their judgment. Some of the earliest cases held that a fine was no bar : and such was the opinion of Plowden, as given in his report of the case of *Stowel* v. *Lord Zouch,* which was adjudged in 11 *Eliz. Plow. Comm.* 373. He says, " in the case of dower, the title is *wholly* accrued after the fine, viz. *by the death of the husband,* for until his death no title was consummate, nor wrong done by the conusee in detaining the land from the wife. And the other two points [marriage and seisin] are of no moment without the third, viz. the death of the husband." He insists, that the wife had no *right* to be barred, at the time of the fine levied. Lord Coke, who prides himself upon being able to give a reason for every thing, attempted to answer Plowden ; and he says : " Although at the time of the fine levied, her title was not consummate, yet the law respects the first and original causes, *scil.* marriage and seisin." *Bingham's case,* 2 *Co.* 93. Now this is plainly no answer to the fact, which he does not deny, that the wife had no right or title at the time of the fine levied. He afterwards repeats the same idea, in different language, *in Lampet's case,* 10 *Co.* 49. His words are, " the intermarriage and seisin are the fundemental causes of dower, and the death of the husband but as an execution thereof." He might have carried his retrospect somewhat further, and gone back to the birth of the wife, or even to the creation of the world ; for those events must be ranked among " the first and original," or " the fundamental causes of dower," as well as " marriage and seisin." But "neither the one nor the other, nor all of them together, conferred *any title on the wife. That accrued on the death of the husband. His lordship, as though not quite satisfied with his own reasoning, proceeds to show, that the opinion of Plowden, as was no doubt true, had been overruled ; and then concludes with the remark, that " now, common experience, without contradiction, is against it." The whole matter evidently comes to this : the woman is barred of her dower by a fine, because the courts have so adjudged ; and not on the ground that she had any interest or estate in

the land upon which the fine could operate at the time it was levied. So in this and most of the other states, if the wife unite with her husband in aliening the land, by deed acknowledged, although that is not a mode in which a feme covert could act at the common law, she will be barred of her dower. She may also alien her own lands in the same way. How this happens to be the rule has never been very satisfactorily explained. *Parsons*, chief justice, thought it depended on *immemorial usage*, or a kind of New-England common law. *Fowler* v. *Shearer*, 7 *Mass. R.* 14. And in this state, it is said to depend on an *ancient practice*. *Bool* v. *Mix*, 17 *Wendell*, 128, 129. Probably no one can give a better reason why a widow shall not have dower after a fine levied, or deed acknowledged, than that which was given by Lord Coke in his answer to Plowden—" common experience, without contradiction, is against it."

It is undoubtedly true, as a general rule, that a statute shall not have a retrospect beyond the time of its commencement, or be so construed as to take away a vested right of property, or defeat a right of action already accrued. *Sayer* v. *Wisner*, 8 *Wendell*, 661. *Varick* v. *Briggs*, 6 *Paige*, 332. But that doctrine can have no bearing upon this case. While her husband lived, the plaintiff had no interest in the land ; no right of property or of action which could be forfeited. Her misconduct vested no new interest or title in any third person, and consequently none was taken away by the act of 1830.

I cannot think it a sufficient objection to the plaintiff's claim, that there was a time, when if her husband had died, she would have been barred. Though she was disabled by *the adultery, and her dow- [ *200 ] able capacity was gone for a time, it was restored before the right accrued—the obstacle in the way of her taking was removed by the repeal of the act of 1787. The point is, I think, settled in her favor by authority. Coke says, " if the husband alien his land, and then the wife is attainted of felony, now is she disabled ; but if she be pardoned before the death of the husband, she shall be endowed." *Co. Litt.* 33, (*a*). And Hargrave in his note, (202), gives a reading of Phillips, who holds, that " if the wife be attainted, and then the husband purchases land and aliens it again, and then the wife is pardoned, she shall have dower of the land which was purchased and aliened during the time she was not dowable." He adds— " So if the wife elopes, and the husband purchases lands and aliens them, and then the wife is reconciled, she shall have dower of those lands." The same doctrine was laid down in *Menvil's case*, 13 *Co.* 23, where it was said, in relation to the elopement, that it was " only a *temporary bar until reconcilement*, which being accomplished, the temporary bar ceaseth." And in relation to the pardon after the wife had been attainted of felony, it was said, that " when the impediment is removed, she shall be endowed."

I think the learned judge was mistaken in the view he took of the case at the circuit, and that the non-suit must be set aside.

New trial granted.