# N. Y. SUPERIOR COURT.

[SAAC SIMON, appellant agt. ALEXANDER S. KALISKE. respondent.

The act of April, 1860, providing for a *general assignment for the benefit of creditors*, requires a *record* of the assignment, in these words, to wit:
" §'6. Every conveyance or assignment made by any debtor or debtors under the provisions of this act, *shall be recorded in the clerk's office of the county* in which such debtor or debtors resided at the date thereof; and every inventory of the property of such debtor or debtors made under the provisions of this act, shall be filed in the same office where such assignment is recorded."
*Held*, that this statute did not convey *constructive notice*, to any purchaser of *real estate in the city of New York*, which had been previously conveyed by such a general assignment and recorded in the county clerk's office of the city and county of New York; and where the purchaser had not received actual notice of such recorded, assignment or information thereof sufficient to put him on inquiry, he must be considered a *bona fide* purchaser without notice, and capable of conveying and executing a good title to such real estate, free from the incumbrance or conveyance caused by such assignment.*

*General Term, April,* 1869.

*Before Ch. Justice* BARBOUR, *and Justices* JONES *and* FITHIAN.

ON the 6th of November, 1867, defendant contracted, under seal, for the consideration of $13,000, receipt of which was acknowledged, to sell and convey to plaintiff the house and lot No. 264 (old No. 168) West 40th street, for the price of $13,000 payable as follows: $500 on signing the contract; $6,000 on the 2d of January, 1868; and the residue by assuming a mortgage for $4,000 on the premises, and by a further mortgage for $2,500. The deed was to be delivered on or before the 2d of January, 1868, and was to convey

---

*If every person is supposed to know the law, this statute requiring the assignment to be recorded in the county clerk's office, being unrepealed would seem to be constructive notice of the record of the assignment.

the fee simple of the premises, free from all incumbrances, except as above stated.

Besides the $500, plaintiff also paid defendant the further sum of $3,000 on the 2d of January, 1868.

On his examination of the titles, plaintiff's conveyancer ascertained that in 1860 the title was in Daniel D. Lord, who conveyed to Henry J. Surtees. Surtees executed two purchase money mortgages for $5,500 to James Cooper Lord, and subsequently, in 1860, conveyed the premises to David Vreeland, subject to these mortgages, which Vreeland assumed.

Vreeland, by an instrument dated January 7, 1861, and recorded in the office of the county clerk of the city and county of New York, in Liber 4 of General Assignments, page 27, January 7, 1861, made a general assignment, for the benefit of creditors, to Henry J. Irving, and conveyed these premises.

Plaintiff's counsel was apprised of this general assignment by the return to his county clerk's search. Nearly eighteen months after this assignment, Mr. Lord commenced an action for the foreclosure of his mortgages. The assignee, Henry J. Irving, was not made a party to the foreclosure, and has never sold or conveyed said premises. This omission brings up one question on this appeal. It was regarded by the purchaser as an objection to the title, which the seller, by his contract was bound to obviate. but which he failed to do.

The seller still retains his property, and plaintiff's $3,500.

The plaintiff sought a specific performance of the contract or the return of his money.

The cause was tried in April, and decided in December last. No opinion was delivered, but the complaint was dismissed with costs.

This appeal is from the judgment on that decision.

The judgment below was based on the conclusion of law, that the record of the general assignment in the county

clerk's office was not constructive notice thereof, so that the assignee was not a proper party to the foreclosure.

GEORGE H. FORSTER, *attorney, and*
.JOHN A. WEEKS, *counsel for plaintiff, appellant.*

I. The laws of this state have provided several record offices for the different descriptions of conveyances and incumbrances, affecting the titles to real estate. In this city, the register office for deeds and mortgages, loan commissioners' office for their mortgages, county clerk's office for judgments, mechanics' and unsafe building liens, *lis pendens*, sheriff's and marshal's certificates. insolvent assignments, foreclosures by advertisement, and appointment of receivers, U. S. circuit court clerk's office for judgments of that court, U. S. district court clerk's office for judgments of that court, adjudications. of bankruptcy and appointment of assignees, tax, arrears, assessments, and Croton aqueduct department for unpaid taxes, assessments and Croton water rates, and sales for the same.

From the searches of Mr. Day, the plaintiff's attorney, in preparation for the foreclosure, it appears that he did not include general assignments in his requisition, while the requisition for general assignments contained in the search of Mr. Weeks brought out the return of this Vreeland assignment. The record of this assignment in Liber 4 of general assignments, January 7th, 1861, under the law passed April 13th, 1860, shows the number of these assignments in that short period so recorded, pursuant to § 6 of ch. 348, laws 1860, page 596.

II. The court at special term, concluded that Henry J, Irving, though not a party, was fully barred by the decree in the foreclosure. The notice of *lis pendens* was filed the 25th of June, 1862.

By § 132 of the Code " Every person whose conveyance or incumbrance is subsequently executed, or subsequently

recorded, shall be bound by all proceedings taken after the filing of such notice."

But this general assignment was executed and recorded nearly 18 months prior. Section 132 of the Code does not limit the place of record to the register's office. This assignment was not recorded there. The register's office is the place for the record of deeds and mortgages; other conveyances and incumbrances affecting real estate are to be recorded elsewhere. For places of record as to judgments, c. f. §§ 63 and 282 of the Code; mechanics' liens, § 2, p. 339, ch. 220, laws of 1844; § 6, ch. 513, p. 955, laws of 1851; § 3, p. 760, laws of 1855; § 6, p. 862, laws of 1863; § 1, p. 1634, laws of 1866; c. f. also § 39, p. 593, laws of 1862.

Sheriff's certificates, § 1, act of April 12, 1820, vol. V, p. 167; § 57, (sec. 43,) title V, ch. VI, 2d part Revised Statutes, 2 R. S., 370; § 1, p. 93, laws of 1857.

Surrogate's order for sale of land to pay debts is of record with the Surrogate. Foreclosures by advertisement with the county clerk, §§ 11 and 12, 2 R. S., 547. Orders for sale of infants' and lunatics' estate by special guardians and committees in county clerk's office, also orders for appointment of receivers of judgment debtors; § 298 of the Code, § 15, p. 850, laws of 1862; ch. 392, p. 661, laws 1863. (*Porter* agt. *Williams*, 9 *N. Y.*, 142; *Judgments of U. S. courts, Brightly's Digest*, 449; 5 *U. S. Stat. at Large*, 393; *Wood* agt. *Chapin*, 13 *N. Y.*, 509; 7 *How. P. R.*, 381; 5 *U. S. Statutes at Large*, 442, 443, 448; § 14, *act of March 2d*, 1867; *Price* agt. *Philips*, 3 *Rob.*, 448.)

III. By § 33 (*sec.* 28,) of article 3, § 9 of article 5, title 1, chapter 5, of the 2d part of the Revised Statutes, the effect of the insolvent assignments there provided for by law, is declared to be to vest in the assignees all the interest of the insolvent at the time of executing the same in any estate or property, real or personal, whether such interest be legal or equitable (2 *R. S.*, 21 *and* 30). Every assignment executed under the third, fourth, fifth and sixth articles of that

title, shall be recorded by the clerk of the county in which it was executed, upon being acknowledged or proved, in the same manner as deeds of real estate. (§ 20 *of article seventh of same title* ; 2 *R. S.*, 38, *p.* 112 *of 3d vol. of 5th edition.*)

·So that before the law of 1860, the statutory insolvent assignments were recorded, in New York, in the county clerk's office.

In like manner, and in conformity with this practice, the place of record for general assignments under act of 1860 was fixed by the sixth section of that act as the county clerk's office. (§ 6, *ch.* 348, *act of April* 13, 1860, *p.* 596, *laws of* 1860.)

˙ IV. That is the only place by law designated for the record of such assignments. By such record of this assignment in that office, on the 7th of January, 1861, Henry J. Irving, within the meaning of § 132, was a person whose conveyance or incumbrance was executed and recorded prior to the filing of the *lis pendens*, in *Lord* agt. *Vreeland*, and was, therefore, wholly unaffected by the judgment in the foreclosure.

The decision at special term would require a double record of every general assignment in this city, in order to give them validity as to real estate, while the statute requires but one.

This court has heretofore sustained the provisions of this law and sustained assignments under it, passing real estate. (*Morrison* agt. ·*Atwell*, 9 *Bosw.*, 503 ; *Read* agt. *Worthington*, 9 *Bosw.*, 617.) The intention of this statute as to these assignments was " to protect those interested under them " (*p.* 629).

*Scott* agt. *Guthrie*, (10 *Bosw.*, 408,) where it is expressly stated that the assignment was recorded with the clerk of the city and county of New York (*p.* 410) fifth line from bottom of page : " The section of the act which requires that assignments shall be recorded in the clerk's. office of the county where the assignors resided at the delivery of the as-

signment must receive a liberal construction." "The pur-
poses of the statute" (in case of non-residence, the case
then) "are answered by recording the assignment in the
county where the assigned property is" (*p.* 416). (*Powers*
agt. *Gradon*, 10 *Bosw.*, 630 ; *Iselin* agt. *Dalrymple*, 2 *Robt.*,
142 ; *Loeschigh* agt. *Jacobson*, 2 *Robt.*, 645.)

The supreme court has likewise sustained such assign-
ments and construed the provisions and intentions of said
act in like manner. (*Baldwin* agt. *Tynes*, 19 *Abb.*, 32 ;
*Hoton* agt. *Neidig*, 17 *Abb.* , 332 ; *Juliand* agt. *Rathbone*, 39
*Barb.*, 97 ; *Turner* agt. *Jaycox*, 40 *Barb.*, 164.)

V. The assignee, Henry J. Irving, inasmuch as he was
entitled, under the general assignment which was recorded
January 7, 1861, eighteen months prior to the filing of the
notice of *lis-pendens*, is within the protection of the princi-
ples of *Price* agt. *Philips*, in this court, and unaffected by
the foreclosure proceedings. (3 *Robertson*, 448 ; *Walsh* agt.
*Rutgers Fire Ins Co.*, 13 *Abb. P. R.*, 33 ; *Slee* agt. *Manhat-
tan Co.*, 1 *Paige*, 48 ; *Vanderkemp* agt. *Shelton*, 11 *Paige*,
28 ; *The Eagle Fire Ins. Co.*, agt. *Lent*, 6 *Paige*, 635.)

VI. The court erred in its decision at special term, in
that it merely dismissed the complaint and did not finally
decide all the rights of the parties on the questions pre-
sented by complaint and proof. The whole case was before
the court; and the plaintiff was entitled to have a decision
of all the matters in controversy. (*Bidwell & Banta* agt.
*Astor Mutual Ins. Co.*, 16 *N. Y.*, 263.)

"The rule of courts of equity was when, they had ac-
quired jurisdiction, and had the whole merits before them, to
proceed and to complete justice between the parties," and
the Code makes that rule applicable to all actions. (*Philips*
agt. *Gorham*, 17 *N. Y.*, 270 ; *N. Y. Ice Co.* agt. *N. W. Ins.
Co.*, 23 *N. Y. R.*, 357 ; *See* agt. *Partridge*, 2 *Duer*, 463 ;
*Marquat* agt. *Marquat*, 11 *N. Y.*, 2 *Kern.*, 336 ; *Fowle* agt.
*Jones*, 1 *Robt.*, 87.)

Simon agt. Kaliske.

By the tender of the deed, which is alleged in the pleadings and found by the decision, under the established rule in this state, the plaintiff became the debtor of the defendant for the balance of the purchase money, and was entitled to the conveyance of the property on payment thereof, and of such damages, by way of interest or otherwise as the defendant may be entitled to for the plaintiff's delay. (*Richards* agt. *Edick*, 17 *Barb.*, 260 *and cases cited* 265.)

This was not one of those cases where time is of the essence of the contract. The court should have adjudged a specific performance of this contract, on the payment of the balance of purchase money, and have held plaintiff liable for such damages, by way of interest, as defendant might have suffered by plaintiff's delay, which certainly was not unreasonable. Or if defendant preferred to retain his property, he should be adjudged to return plaintiff's money.

The judgment of dismissal was erroneous, and should be reversed, and a proper judgment rendered, which should dispose of all the questions arising on the facts between these parties.

JOSEPH C. LEVI, *attorney, and*

JOSHUA M. VAN COTT, *counsel for defendant, respondent.*

I. The general registration acts, require all conveyances of interests in land, in the city and county of New York, to be recorded in the office of the register of deeds, to charge *bona fide* purchasers with constructive notice thereof. (1 *R. S.*, 755, *sec.* 1.)

Voluntary assignments for the benefit of creditors are not excepted from the operation of the general act, by the assignment act of 1860. (*Laws* 1860, *ch.* 348, *p.* 594, *sec.* 6.)

" Every conveyance or assignment made by any debtor or debtors under the provisions of this act, shall be recorded *in the clerk's office of the county in which such debtor or*

*debtors resided at the date thereof;* and every inventory of the property of such debtor or debtors, made under the provisions of this act, shall be *filed* in the same office where such judgment is recorded."

The general purpose of this act was to remedy certain notorious evils and secure to creditors notice and knowledge (1) of the *fact* of such assignment (§ 6) and (2) notice of its provisions, and of the property which passed to the assignee; (3) a remedy (§ 5) against the assignee, enforcing a due administration of the assigned estate. Of course, the record is notice to the *creditors* and to all persons interested in the *assignment.* The act does not in terms, or by reasonable implication, affect persons who are not creditors or interested in the assignment.

It will be observed, that the assignment may be of *all the assignor's property,* without specifying whether it is real or personal, or designating the property in any way. The debtor " within twenty days " after making the assignment, is required (§ 2) to deliver a schedule or inventory of his property to the county judge; and § 6 provides, that "every *inventory* of the property of such debtor or debtors made under the provisions of this act, shall be *filed* in the same office where *such assignment is recorded."* So that there is no *record,* but simply a *filing* of the description of the real estate which passes under the assignment.

All the provisions of this act are enjoined, although only *personal* estate passes under the assignment.

II. The act of 1860 has no feature common to general registration acts.

1. Those acts require the conveyance, which *describes* the property, to be *recorded;* this act merely requires a general inventory of the property, real and personal, to be *filed.*

2. Those acts require the conveyance to be recorded *before* it becomes effective, as notice to *bona fide* purchasers; this act permits the designation of the property to be *filed,*

for all the effective purposes of the act, twenty days *after* the making of the assignment.

3. Those acts require the conveyance to be recorded in the *registration district* where the property is situated; this act requires the filing of the inventory, not where the property is located, but in any county, however remote, where the assignor may happen to reside.

The effect of this construction would be, to require every person dealing with real property after 1860, to know, first, where every person who had had an interest in it *had at any time* thereafter resided; second, whether any such person had been insolvent; third, when he had been insolvent; fourth, whether he had ever made an assignment, and where he resided when he made it. Upon this construction and theory, our title would be defective, if Irving (*the assignee*) had been a party to the foreclosure, if the assignor had happened to make an assignment in some other county where he lived at a prior date.

Consequences so extraordinary, and so inimical to the convenience and safety of transactions in real estate, could not have been intended by the legislature.

III. There are various special liens, where statutes prescribe the mode of the notice and its effect in creating a lien, viz:

1. Taxes and assessments. (1 *R. S. Banks*, 5th *ed.*, *pp.* 917 *to* 954.)

2. Bonds of receivers of taxes and their sureties. (*Laws of* 1843, *chap.* 230.)

3.—4. Judgments in U. S. circuit and district courts. Vide—acts organizing them.

5. Mortgages to U. S. loan commissioners. (*Laws of* 1837, *chap.* 150, § 43; *New York Life Ins. Co.* agt. *White*, 17 *N. Y. R.*, 469.)

6. Conveyances, mortgages, leases, &c. (3 *R. S., Banks* 5th *Ed., page* 45, § 1.)

7. Judgments of state courts. (2 *Edmond's Stat.*, *p.* 371, § 3, *and Code* § 282.)

8. Notices of *lis pendens*. (*Code* § 132.)

9. Mechanic's Liens. (*Laws*, 1844, *chap.* 305 ; 1854, *chap.* 402 ; 1858, *chap.* 204.).

10. Certificates of Sheriff's sale. (2 *Edmd.'s Stats.*, *p.* 388, §§ 61 *and* 62.)

11. Collectors' bonds. (1 *Edmd.'s Stats.*, *p. p.* 318 *and* 319, §§ 19 *and* 20 ; *Laws of* 1838, *chap.* 216.)

12. Foreclosures by advertisement. (3 *R. S.*, *Banks'* 5th *ed. p.* 859, § 3, *subd.* 2 ; *and p.* 861 §§ 8 *and* 12, *and p.* 860, § 6.)

13. Appointment of Receivers. (*Code* § 298.)

The decisions in other states, on similar statutes, accord with the decision here appealed from. (*Burrill on Assignments*, 2nd ed. 292–3.)

IV. There was no actual notice of the assignment.

To make a notice effective, it must reach all the parties through whom the title is derived. A grantor without notice can convey a good title to a grantee with notice; and a grantor having notice can convey a good title to a grantee without notice. (*Wood* agt. *Chapin*, 3 *Kern.*, 509 ; 1 *Story's Eq.*, § 409 ; *Jackson* agt. *Given*, 8 *J. R.*, 401 ; *Demarest* agt. *Wynkoop*, 3 *J. Ch. R.*, 147 ; *Fort* agt. *Burch*, 5 *Barb. R.*, 194 ; *Hooker* agt. *Pierce*, 2 *Hill* 654 ; *Jackson* agt. *Post*, 15 *Wend.*, 595 ; *Varick* agt. *Briggs*, 5 *Paige*, 329 ; *Jackson* agt. *McChesney*, 7 *Cowen*, 360.)

V. Any record made or notice given after *lis pendens* filed would have been ineffective. (*Code as amended in* 1858, § 132 ; *Stern* agt. *O' Connell*, 35 *N. Y. R.*, 104 ; 1 *Story's Eq.*, §§ 405, 406 ; *Cleveland* agt. *Boerum*, 24 *N. Y. R.*, 613.)

The judgment should be affirmed with costs.

*By the court*, BARBOUR, Chief J. This was an action brought by the vendor on a contract which was made in

1867, for the sale and purchase of a lot of land in this city, against the vendee therein, to obtain a specific performance, or the return of a portion of the purchase money paid thereupon.

By the contract in question the defendant undertook to execute to the plaintiff "a proper deed for the conveying and assuring to him the fee simple of the premises free from all incumbrances," except certain mortgages therein mentioned, and the plaintiff agreed to pay therefor $6,500, in money, and to assume the payment of these mortgages, and the sum of $3,500 was then and subsequently paid by him upon the contract. But, before the delivery of the deed, the plaintiff discovered upon an examination of the title, that in 1860, David Vreeland, the then owner of the premises, mortgaged the same to J. C. Lord, for $5,500; that in 1861, Vreeland conveyed and assigned the land, with other property, to Henry J. Irving, for the benefit of the assignor's creditors, which deed of assignment and conveyance was filed in the county clerk's office as an assignment; that in 1862, a foreclosure suit was brought upon the Lord mortgages, resulting in a judgment under which the premises were sold by the sheriff to John Douglas, who subsequently conveyed them to one Fitzpatrick, by whom they were granted to the defendant, but that Irving, the assignee of Vreeland, was not made a party to such foreclosure suit.

On ascertaining those facts (which I may here say were fully proven upon the trial, as well as the further fact, that some of the creditors mentioned in the assignment were still unpaid) the plaintiff objected to the title, upon the ground, that the estate and interest of Irving in the premises, were unaffected by the decree of foreclosure, and requested the defendant to procure a release of that interest, and subsequently also requested him to return the $3,500.

The defendant refused to comply with either of those requests, but made and tendered to the plaintiff a deed of the premises, which deed the plaintiff rejected.

No evidence was given upon the trial tending to prove that Vreeland's deed of assignment to Irving, had ever been recorded in the office of the register of deeds, nor that the defendant, or either of the persons under whom he derived title, subsequent to the sheriff's sale, had any actual notice or knowledge of the existence of such assignment, and for that reason, the learned justice, before whom the trial was had, directed a judgment dismissing the complaint with costs.

The ultimate question to be determined by the court on this appeal, is whether the deed which was made and tendered by the defendant to the plaintiff, would, if accepted by the latter, have vested in him an estate of inheritance in the premises in fee simple, free from incumbrance. For if it would, such tender and refusal exonerated the defendant from all obligation, either to convey the land or to return that portion of the purchase money which he had received upon the contract, and the judgment dismissing the complaint upon the merits, was consequently just and proper.

The assignment to Irving was not a mere incumbrance upon the title, but was a full and complete deed of conveyance of the premises in fee, for the purposes of the trust. A purchaser therefore, deriving his title from Vreeland subsequent to his grant to Irving, must be presumed to have purchased in good faith, and in ignorance of that deed, unless it appears that he had notice thereof, at the time of the conveyance to himself. The notice required may be either actual or constructive, the latter being the mere creature of the statute, as provided for in a single section (1 *R. S.*, 756, §1), and the other, embracing at least such knowledge or information, in the actual possession of the purchaser at the time of the conveyance to himself in regard to the prior grant, as would put a careful, prudent man upon further inquiry.

The fact that the deed of assignment was recorded in the county clerk's office, was wholly unimportant.

Simon agt. Kaliske

The statute provides for but one kind of constructive notice viz: the recording of the deed in the register's office; and therefore, the purchaser finding there, upon examination, no record of a prior grant, would have a right to suppose none existed, unless he had been informed in some way, that such grant had been made. In the absence of such information, he was no more bound for his own safety, to search the records in the county clerk's office for a deed of conveyance, than he was to examine the records of this court for that purpose; although if he has been informed that a conveyance of the land was embraced in an assignment made by Vreeland to Irving for the benefit of creditors, it probably would have been his duty to examine the records in the clerk's office, to see if that assignment contained a conveyance of the land.

It was incumbent upon the plaintiff to prove, upon the trial, that the assignment to Irving was recorded as a deed, in the register's office, prior to the recording there of the sheriff's deed, or to show by competent evidence, that the grantee in that deed, and also, his grantee and the defendant, were informed prior to the recording of their deeds, respectively, that the land had previously been conveyed by Vreeland. For, if either of those persons took and recorded the conveyance to himself in good faith, and in ignorance of the prior grant, his title was not only good, but he could confer a like perfect title upon one who had a full knowledge of such prior conveyance. "If this were otherwise," as Chancellor WALWORTH says, in *Varick* agt. *Briggs*, (6 *Paige*, 323) " a *bona fide* purchaser might be deprived of the power of selling his property for its full value."

As neither of those facts were proven, the complaint was properly dismissed.

The judgment must be affirmed with costs.

I concur, S. JONES, F. J. FITHIAN, JJ.