By the Court—Robertson, J.
Only two questions arise in this case, upon whose determination it depends ^ the first is the efficacy of the parol assignment of the mortgages in question to the plaintiff, from Charles Hoyt, as security for a debt due by him, to confer an ownership as against subsequent purchasers; and the second embraces the good faith of the purchase by the defendant for value, without any notice of the plaintiff’s rights, at the time of the written transfer of them to the former, within the meaning of the recording act.
Two objections are made to the plaintiff’s availing himself, of any parol assignment to him, even if it existed and was valid; First, That the Referee has not found any such fact, and Secondly, That there was no such allegation in the complaint, until an' amendment was allowed by the Referee; which he either had not the power to allow, or ought not to have allowed. It is fully established by the recent adjudications of the Court of Appeals, that every intendment is to be made, of which the evidence will admit, to sustain the report of a Referee, and to supply the necessary facts to justify it, (Carman v. Pultz, 21 N. *522 Y. R., 547 ; Grant v. Morse, 22 Id., 323,) and the evidence in this case fully warrants the assumption of the making of such a parol assignment. In reference to the second objection, the title or ground of claim to the mortgages by the plaintiff by the parol assignment, does not appear to me to be so distinct from that set out in the complaint, as to bring the case within the principle laid down in The Union Bank v. Mott, (18 How. Pr. R., 506, 508 ; S. C., 19 Id., 267, 273 :) The person from whom either assignment came, was the same, the only differences between that first and that afterwards set out, were; that the former was by parol instead of written, and was taken as security for an uncertain balance of account, instead of a certain debt; it was, therefore, not beyond the jurisdiction of the Eeferee to permit the amendment, and his discretion appears to have been well exercised in permitting such amendment, as in so many dealings between the parties, an innocent mistake might easily have arisen as to the debts which the assignment was intended to cover, as well as the fact of a parol assignment having been made after the written one. It was, besides, only anticipating what might have been the action of the Court, in conforming the pleadings to the proofs, as evidence of the existence of such parol assignment, had already been received without objection at the time of the amendment. (Code, §§ 173, 272.)
The parol assignment was clearly effectual to transfer the property to the plaintiff, unless prevented from doing so by the Statute of Frauds, and such objection can be taken by third persons. The written bonds and mortgages were already in the possession of the plaintiff, and he held a written assignment of them; the consideration for the parol assignment was a new debt to be incurred thereafter: There was, therefore, no necessity for them to be delivered a second time, and as no part of the consideration could be paid at the time of the assignment, unless a parol assignment was good, there was no other substitute which could have been made to take the place of a written one in order to make the transaction binding. Before the Eevised Sta *523 tutes of 1830, such choses in action could have been assigned by the delivery of written evidences of them or of some instrument creating a lien or obligation, (Runyan v. Mersereau, 11 J. R., 534 ;) and no particular form was necessary for the purpose; (2 Story Eq. Jur., § 1047, Marten v. Naylor, 1 Hill, 583 ; 1 Pars. on Con., 197 :) Where they were already in the party’s possession, an agreement that he might retain them was all that was necessary, (James v. Johnson, 6 Johns. Ch., 417 ;) and this was probably so even if in the hands of another. (Cross on Lien, 65 ; Falkener v. Case, 1 Brown Ch. C., 125.) I apprehend the addition of the words “ things in action,” in the present Statute of Frauds, to the articles whose sale was required, by the former statute, to be manifested in writing, was not made to include a case like the present, or interfere with any previous law. The statute itself was originally intended to prevent the absolute sale of property, for an inadequate price established by perjured or mistaken testimony, or the conversion of a mere treaty for selling into an absolute sale. But it did not intend to interfere with the custom of commerce, by which certain acts, such as part delivery or part payment, had been adopted as evidence of a sale; and it certainly could not have been intended by the addition already spoken of, to require a writing for the continuous hypothecation of an article already in the pledgee’s possession and transferred to him by a bill of sale; and still less where the consideration was the incurring of a future and contingent debt, which could not be defined, although it might be described in general terms. The parol assignment, therefore, I must hold to be valid and effectual.
The second question which arises is, whether the defendant was, within the meaning of the statute, (1 R. S., 756, § 1,) such a subsequent purchaser in “ good faith and for a valuable consideration of the same real estate,” as that for which the plaintiff held an unrecorded conveyance.
Before the Eevised Statutes of 1830, the record of an assignment of a mortgage was not notice to any one of its *524 existence. (James v. Morey, 2 Cow., 246 :) But now, although such an assignment would come within the statutory definition of “ conveyance,” (1 R. S., 762, § 38 :) the preference over the holder of a prior unrecorded “ conveyance,” given in the same statute, is only to a purchaser of the “ real estate,” conveyed by such conveyance, and not to a purchaser of the “ conveyance ” which a mortgage would be: What is meant by “real estate” is defined in-the same statute, (1 R. S., 762, §.38,) which does not include “mortgages.” These considerations are overlooked by Chancellor Wai/wobth in deciding Vanderkemp v. Shelton, (11 Paige, 28 :) The statute ought to be construed strictly as being in derogation of existing rights.
The Eeferee, however, has stated, as a conclusion of law, from the facts found by him, that the assignment to the defendant of the mortgages in question, was “ not received in extinguishment of an equal amount of indebtedness existing at the time of the transfer,” one of those facts being that such assignment was delivered in settlement: This I apprehend is to be construed to mean, by way of security yand the evidence points rather to such an arrangement, than to a discharge of Charles Hoyt. (See Higby v. The New York and H. R. R. Co., 3 Bosw., 504, and cases cited :) If such be considered to be the inference as a fact, from the other facts of the case, it is clear the defendant was not a Iona fide purchaser, but took the assignment as mere security for a debt; and if the question be still open I think we are warranted in drawing as an inference of fact what the Eeferee has stated as a conclusion of law; if necessary to sustain the report, we are undoubtedly at liberty to do so.
At the time of the first interview between Charles and Jesse Hoyt, the former was indebted to the latter’s firm in a large sum of money, borrowed by him, two days previously for half an hour only and never heard of in the meantime: Ho thing appears to have been said about this breach of faith and the only thing proposed was to sell the mortgages or raise money on them. ' This might possibly *525 be construed as meaning to obtain it for the purpose of discharging the debt in question, were it not that Jesse Hoyt said, he had no money, but the defendant might have some. This clearly did not refer to canceling any of the debt, because both parties owned that at the time". No money was ever advanced; the only act done was a change of credit on the books of the defendant’s firm and the assignment was then executed: This assignment was accompanied by a worthless check, and was taken without any examination of the title or even a covenant that any amount was due on the mortgages; but is alleged to have been taken in payment of a debt of §7,000: Tiiough pronounced defective, and notwithstanding another was obtained without difficulty, it was put on record forthwith, also without even an examination of the title: The check, of the payment of which, there was no probability at the time, was settled two days afterwards by a doubtful security. These circumstances show so much embarrassment in the affairs of Charles Hoyt, and such a fear by the defendaut of his insolvency, as to warrant the conclusion that the mortgages were taken as temporary security to be replaced by better if he could give it, rather than as an investmeut of money due from a solvent debtor.
But if this were not so, these circumstances, in connection with others, lead us irresistibly to the conclusion that the defendant took the assignment with knowledge of facts sufficient to put him on inquiry as to the existence of a prior assignment. Charles Hoyt told Jesse Hoyt, in their first interview, in reply to a question to that effect by him, (for putting which, no reason is assigned,) that the mortgages had been assigned, but it had been settled; and he then tore up in his presence some assignment: Jesse Hoyt deemed this of importance enough to be communicated to his brother, and even after the arrangement was completed, was so impressed with the belief of the existence of a prior assignment, that he specially instructed his Counsel, besides examining the title, to search for assignments. The whole negotiation was con *526 ducted and concluded in haste, without the presence of Counsel, who might have been dangerous witnesses in case of a subsequent investigation into the good faith of the transaction, and I think it cannot be doubted on this state of facts, that enough circumstances came to the knowledge of the defendant and his agent, to have put them upon inquiry; and had they been desirous of ascertaining the existence of a prior assignment, of enabling them to discover to whom it had been executed. This they would have done, unless Charles Hoyt should deceive them, which he could not well do, after once stating the existence of an assignment. But neither Jesse Hoyt nor the defendant used due diligence in prosecuting the proper inquiry. (Anderson v. Van Alen, 12 J. R., 343 ;) and this, in connection with the fact that the assignment was taken to secure a doubtful debt from an embarrassed debtor, shows that the defendant had a motive in not pushing his investigations too far.
It is true that the whole of the old debt of $20,000 was . closed up; but only by taking a check, which was not paid, and probably not expected to be paid; the want of money on the part of Charles Hoyt, not appearing to have ceased. A new security, instead of such check, was given two days after, for giving which, at the time, there seems to have been no reason. The taking of the check was probably to give color to the theory of an absolute extinguishment of the original debt.
The report of the Beferee would, therefore, not be set aside, were this a motion for a new trial on a case, if he had found that the assignment to the defendant was only as security for, and not in extinguishment of, so much debt, and that as matter of law, he had notice of sufficient facts to put him on inquiry. If the two facts, that such assignment was merely for security and such notice, can be now supplied without a formal finding, the judgment should be affirmed.
But even if the defendant had absolutely relinquished seven-twentieths of his claim against Charles Hoyt for the *527 mortgages in question, I do not think the law so clearly settled in his favor as his Counsel seemed to imagine. It is true this Court in three cases has so held, (White v. Springfield Bank, 3 Sandf., 222 ; New York Marbled Iron Works v. Smith, 4 Duer, 362, and Purchase v. Mattison, 3 Bosw., 313 ;) hut the language of Judge Bexio, in deciding the more recent case of Van Heusen v. Radcliff, (17 N. Y. R., 583,) in the Court of Appeals, is explicitly to the contrary: lie there states, that “in regard to commercial paper, it has long been settled that no person could claim the title of bona fide holder, who receives the bill or note on account of a precedent debt, there being no new consideration or anything parted with by the indorsee at the time,” and he refers to the cases of Youngs v. Lee, (2 Kern., 553,) and Dickerson v. Tillinghast, (4 Paige, 219,) as authority. In the first of those cases, (Youngs v. Lee,) which was in the Court of Appeals, the decision was put on the ground, that the debt discharged was not due at the time of the discharge; and in it the other case of Dickerson v. Tillinghast, as well as those of Stalker v. McDonald, (6 Hill, 93 ;) Coddington v. Bay, (20 J. R., 637 ;) The Bank of Sandusky v. Scoville et al., (24 Wend., 115 ;) and Bank of Salina v. Babcock, (21 Wend., 499,) were cited with approbation. In Boyd v. Cummings, in a subsequent part of the same volume, (17 N. Y. R., 101,) it was deemed advisable to place the decision upon the ground of the abandonment of supplementary proceedings, as part of the consideration. Chancellor Walwobth, in the case of Dickerson v. Tillinghast, already referred to, (ubi sup.,) held distinctly and decidedly, that a mere release of a debt is not a sufficient parting with value to constitute a bona fide purchaser, and in this he followed the early case of Coddington v. Bay, (20 J. R., 637), where that doctrine was first laid down. The same eminent jurist had occasion still further in the Court of last resort, (Court of Errors,) in Stalker v. McDonald, already referred to, (ubi sup.,) to reiterate the principle and fortify it by an elaborate argument and examination of authorities; commenting among others, upon the cases *528 of The Bank of Sandusky v. Scoville, and Bank of Salina v. Babcock, already alluded to; (ubi sup.) those being cases in which the doctrine was inapplicable, because the plaintiffs had discharged' indorsers as well as drawers of the notes: In this conflict of authorities, it might appear presumptuous to pronounce, when not essentially .necessary, that the Court of Appeals, in the case of Van Heusen v. Radcliff, (ubi sup.,) had adopted the principles laid down by Chancellor Walworth, and the Supreme Court, and thereby overruled the cases in this Court already referred to : But upon the other two grounds, both that the defendant was not a purchaser at all, of the mortgage, or if he was, was clearly not one in good faith, because he was chargeabló with notice, of the plaintiff’s prior assignment, the judgment should be affirmed, with costs.