GEORGE W. BELDEN, Administrator, &c., Respondent, *v.* ELLIOTT MEEKER, impleaded, &c., Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1870.)

To maintain his action as administrator, the plaintiff proved letters of administration in which his intestate's decease, and residence immediately prior thereto in the county of the surrogate from whom the letters issued, were recited.—*Held,* that there was *prima facie* evidence of the facts so recited.

Proof that the intestate did business and had an office in the county, is, it seems, presumptive evidence that he resided there at his decease.

An assignment of a bond and mortgage, and " the moneys due and to grow

due thereon," carries by its terms a note for which they are held as collateral.

The debtor upon a security for a sum exceeding $1,000, may not impeach a transfer thereof on the ground that it was made for a moneyed corporation (1 R. S., 591, § 8), by its president, without authority by previous resolution of the board of directors.

Nor can he avail himself of an objection that such transfer was made by the president to pay an individual debt, and without consideration passing to the corporation.

And, it seems, without proof to the contrary due authority to the president will be presumed in favor of the transfer.

The assignee of a mortgage is a purchaser of "real estate" within the intent of section 1 of the recording act (1 R. S., 756); and the assignment being made in good faith and for a valuable consideration, he is protected by the record thereof against a release subsequently made by his assignor.

The principles of the recording acts are extended by the Revised Statutes to assignments of mortgages. Upon this point *Vanderkemp* v. *Shelton* (11 Paige, 38) reaffirmed, and *Hoyt* v. *Hoyt* (8 Bosw., 577) distinguished and explained. Per TALCOTT, J.

THIS was an action to foreclose a mortgage. The facts are sufficiently stated in the opinion of the court.

*Erastus P. Hart*, for the appellant.

*John W. Dininy*, for the respondent.

Present—MULLIN, P. J., and TALCOTT, J.

By the Court—TALCOTT, J.   Appeal from judgment in a foreclosure case rendered by Mr. Justice JOHNSON at Special Term, in Steuben county.

James M. Osborn and Peter Wells were copartners in keeping a hotel, which was also owned by them.   On the 14th of July, 1856, they had a note for $4,000 payable three months after date, discounted by the bank of Hornellsville, a bank organized under the general banking law.   At the same time and as collateral to the note, they executed and delivered to " Samuel Hallett, president of the Bank of Hornellsville," their joint bond conditioned for the payment of the $4,000 with interest, and their joint mortgage on the hotel property. At the same time Osborne executed his individual bond

accompanied by a mortgage on certain real estate owned by him individually, also collateral to the said note. On the 15th of October, 1856, Samuel Hallett, president of the bank of Hornellsville, " assigned to Charles Belden, of the city of New York, the joint bond and accompanying mortgage," and the moneys due and to grow due thereon, with the interest.

The bank had a board of directors. The assignment was made to Charles Belden to secure an individual indebtedness of Hallett. The note was not delivered to Belden at the time of the assignment of the bond and mortgage, but remained in the bank, and payments were there made upon it by the makers from time to time down to the middle of May, 1857, leaving unpaid a sum with interest for which the judgment was rendered. The note was indorsed in blank by the payee and others, and at some time before his death was delivered to Belden, by one of the officers of the bank. There was no proof of any resolution of the board of directors, authorizing the transfer of the note or bond and mortgage. The assignment to Belden was recorded October 6th, 1857.

September 4th, 1857, James M. Osborn sold and conveyed his interest in the hotel property to his partner, Peter Wells, who executed back a mortgage for a part of the purchase money, which mortgage was assigned to one Hyatt, who foreclosed the same and sold the property on the decree to the defendant, Elliott Meeker, who received a conveyance from the sheriff in April, 1859, then having no *actual* knowledge of the assignment of the joint mortgage of Wells and Osborne to Belden, and who purchased the property upon the information and belief that the hotel property had been released by Hallett from the lien of the joint mortgage, except in case the individual property of Osborne mortgaged for the same debt should prove insufficient. And on the trial the defendant, Meeker, established that such an instrument had been at some time executed by Hallett as president, &c., and delivered to Wells, but it was not produced and could not be found on the trial, and had never been acknowledged or recorded. The court at Special Term found as a matter of

Belden *v.* Meeker.

fact that this instrument was so executed by Hallett after his return from Europe in the fall of 1858.

The appellant presents three points for consideration :

1st. That there was not sufficient evidence of the plaintiff's character and right to sue, because the death of Charles Belden, and the other facts necessary to give the surrogate of New York jurisdiction to grant the letters of administration were not proved *aliunde*, the letters.

2d. That the assignment to Charles Belden was void, because it was for the individual indebtedness of Hallett to Belden, and because no resolution of the directors authorizing the transfer was proved, and

3d. Because of the alleged release, the plaintiff should be required first to resort to the individual mortgage of Osborne; and that the record of the assignment of the joint mortgage to Belden did not operate as notice to Meeker of its existence and date.

The statute (2 R. S., 80, § 56), provides that letters of administration, granted by an officer having jurisdiction, shall be conclusive evidence of the authority of the person to whom they may be granted, until the same shall be reversed or revoked.

The jurisdictional facts necessary were, first, the death ; second, the fact that the intestate was at, or immediately previous to his death, an inhabitant of the county of the surrogate granting the letters.

Letters of administration are *prima facie* evidence of the death of the intestate. (1 Greenleaf's Ev., § 550; *Newman* v. *Jenkins*, 10 Pick., 515.)

It appeared in the evidence, that the intestate did business, and had an office in New York; presumptively he was an inhabitant there, up to the time of his death, nothing appearing to the contrary. Besides, as a general rule, the recital in the decree of a court of inferior jurisdiction, of the facts necessary to give jurisdiction, is *prima facie* evidence of such facts, subject to be contradicted, but sufficient *per se* to uphold the proceeding if uncontradicted. (*Barber* v. *Winslow*, 12 Wend., 102.) The surrogate's order, granting the

administration, and proved by exemplification in this case, recites all necessary facts.

Presumptively, these facts were found upon competent evidence. In the case referred to by the appellant's counsel (*Sibley* v. *Waffle*, 16 N. Y., 184), Mr. Justice Bowen, delivering the opinion, says: " I think the letters issued to Stephen Dusenbury were *prima facie* evidence of his due appointment, and that the requisite evidence was before the surrogate to authorize his action, the contrary not appearing."

The assignment of the bond and mortgage by its terms carried the principal debt; it was not only of the bond and mortgage, but of the "moneys due, and to grow due thereon."

The statute prohibiting the transfer of the assets of a moneyed corporation exceeding $1,000 in value, without a previous resolution of the board of directors, is for the benefit of the corporation, its stockholders, and creditors ; so long as none of these seek to repudiate the transaction, the debtor cannot impeach the transfer for want of proof of a previous resolution. (*Eno* v. *Crooke*, 10 N. Y., 65; *Elwell* v. *Dodge*, 33 Barb., 336.) It is to be presumed, that Hallett, the president of the bank, had authority to make the transfer, nothing appearing to the contrary ; and although in fact the transfer was made to secure Hallett's individual indebtedness, yet in the absence of any objection on the part of the bank, its stockholders, or creditors, the debtor cannot raise the objection, that there was no consideration between Hallett and the bank for the assignment, or that the use of it, to secure the individual debt of Hallett, was a fraud upon the bank.

We are not called upon to consider whether the payments made upon the note after the assignment, and while the note was left in the possession of the bank can be repudiated by the assignee, since the plaintiff only claims to recover, and has only obtained judgment for the amount unpaid.

As to the release, the court finds upon sufficient evidence, that the release was executed after the assignment of the bond and mortgage and debt to Belden was recorded. This we think is fatal to that branch of the defence.

We are referred to a decision of the Superior Court of New York (*Hoyt* v. *Hoyt*, 8 Bosw., 511), purporting to overrule the case of *Vanderkemp* v. *Shelton* (11 Paige, 38), and holding that the record of the assignment of a mortgage does not protect the assignee against a prior unrecorded assignment of the same mortgage of which the second assignee had no notice, although he might be a purchaser in good faith, upon the ground that the statute protection is given only to a purchaser of the real estate conveyed and not to a purchaser of the conveyance.

It is to be remarked, that in *Hoyt* v. *Hoyt*, the court held that the second assignee took his assignment only as security, and was not, therefore, a *bona fide* purchaser "for a valuable consideration."

The observations, therefore, of the court on the subject of the effect of recording an assignment of a mortgage were not necessary to the decision of the case. But we are of opinion that the construction of the recording act adopted by the chancellor in *Vanderkemp* v. *Shelton*, is the true one, to wit: That by the Revised Statues the principles of the recording acts are extended to assignments of mortgages. It is conceded by the court in *Hoyt* v. *Hoyt*, that an assignment of a mortgage comes within the definition of "conveyance" as used in the recording act, and may be recorded as such; this must be upon the ground that it is an "instrument in writing by which an interest in real estate" is "assigned."

The assignee of a mortgage by the assignment surely acquires the interest in the real estate which the mortgagee took by the mortgage, and he is to that extent the purchaser of the same real estate.

The words in the first section of the recording act "of the same real estate, or any portion thereof," must be held to embrace, not only the purchaser in fee of any *specific portion*, but the purchaser of any *interest* in the whole or any part thereof.

The purchaser of a mortgage is not only "a purchaser of the conveyance," but is a purchaser of the *interest* which is

conveyed by the conveyance. The spirit and intent of the recording acts is to make the recording of an instrument, entitled to be recorded, constructive notice to all parties subsequently dealing with the same title.

Any other construction as applied to the assignment of a mortgage, would be attended with great inconvenience, and much impair the value of these securities. The doctrine contended for by the appellant in this case, would make it incumbent upon every assignee of a mortgage to keep a constant watch of the transfers of the equity of redemption, in order to give *actual notice* of his assignment to the purchaser, and thus protect himself from a release, or discharge of his mortgage, to be executed by the original mortgagee.

And in this case, no amount of vigilance would have protected the assignee, as the release was executed without his knowledge, not put upon record, but known to, and relied upon by the purchaser of the equity of redemption, at the time of his purchase. Such a construction of the recording act could not be tolerated.

The statute makes one exception to the effect of the record of the assignment of a mortgage as notice. Section 42 (41), provides that the record of such assignment shall not be deemed in itself, notice of such assignment to a mortgagor, his heirs, or personal representatives, so as to invalidate any payment made by them, or either of them.

This was to save the necessity of examining the record every time it was intended to make a payment, and affords a clear implication, that for all other purposes, the record of the assignment is notice, even to the mortgagor.

In this case, therefore, the assignment of the mortgage having taken place, and been recorded prior to the execution by the mortgagee of the release, the mortgagor who obtained it, and all persons acting upon it, must be deemed to have had notice, that the original mortgagee had no power to release the premises, wholly or partially, from the operation of the mortgage at the time when he undertook to do so.

The judgment of the Special Term is affirmed with costs.

Mr. Justice JOHNSON having decided the case at Special Term, did not sit on the appeal.