CHARLES B. WESTBROOK, Appellant, *v.* WILLIAM GLEA-
SON, Impleaded, etc., Respondent.

To enable a subsequent purchaser to assail a prior unrecorded mortgage
under the recording act (1 R. S., 756, § 1), it is incumbent upon him to
show not only that he was a *bona fide* purchaser for value without
notice, but that his conveyance was first recorded.

Where a junior mortgagee, with notice of a prior unrecorded mortgage,
assigns his mortgage to a *bona fide* purchaser for value, who has no
notice, the assignment is the " conveyance," within the meaning of said
act (1 R. S., 762, §§ 37, 38), and such assignee is entitled to preference,
only in case he records his assignment before the first mortgage is
recorded. (DANFORTH, J., dissenting.)

*Jackson* v. *Van Valkenburgh* (8 Cow., 260), distinguished.

*It seems,* that where, at the time of the execution of a mortgage, A., a third
party, is in possession of the mortgaged premises, under an executory
contract for the purchase thereof, and has made improvements thereon,
and subsequently, and before the mortgage is recorded, A. takes a con-
veyance, in good faith, without knowledge of the mortgage, giving his
bond and mortgage for the whole of the purchase-price, and the deed
and subsequent mortgage are recorded before the prior mortgage, the
title of A. is superior to the prior mortgage ; and a purchaser upon fore-
closure of the mortgage so given by A. takes all his title, and so takes
the premises freed from the lien of the prior mortgage.

In such case, for the purpose of determining the question of the lien of the
prior mortgage, the legal title of A. will be considered as relating back
to his equitable title, and is thus freed from the lien ; but if by accepting
a deed A. loses his equitable rights as vendee in possession under his
contract, then he is protected by the recording act, as by parting with
such rights he becomes a purchaser for value, and is entitled on that
ground to priority, although he paid no portion of the purchase-money.

*Westbrook* v. *Gleason* (14 Hun, 245), reversed.

(Submitted May 22, 1879 ; decided November 25, 1879.)

APPEAL from judgment of the General Term of the Supreme
Court, in the third judicial department, affirming so much of
the judgment herein as held that defendant Gleason had
acquired a title to fifty-five acres of the lands, to foreclose a
mortgage whereon this action was brought, superior to said
mortgage. (Reported below, 14 Hun, 245.)

The facts are fully set forth in the prevailing opinions.

*M. Schoonmaker*, for appellant. The defendant Gleason, as assignee of McKoon, the mortgagor, took the mortgage under the assignment subject to the same equities under which the same was held by his assignor; and, as to the mortgage in his hands, the plaintiff's mortgage had priority. (*Crane* v. *Turner*, 67 N. Y., 439; *Schaffer* v. *Reilly*, 50 id., 61; *Greene* v. *Warwick*, 64 id., 220; *Delancey* v. *Stearns*, 66 id., 157; *Trustees Un. College* v. *Weaver*, 61 id., 88; *Davis* v. *Beckstein*, 69 id., 440.) Securing the payment of the purchase by a mortgage on the premises conveyed, is not a valuable consideration within the requirements of the recording act. (2 Fonblanque Eq., 149, note; *Jewell* v. *Palmer*, 7 J. Chy., 68; *Ells* v. *Tourley*, 1 Paige Chy., 284; *Whitbeck* v. *Kain*, id., 208; *Demott* v. *Stanley*, 3 Barb. Chy., 403; *Weaver* v. *Barden*, 49 N. Y., 286; *Cary* v. *White*, 52 id., 138.) After the conveyance by McKoon to Jones, and the execution of the mortgage back by Jones to McKoon, there were no existing equities in Jones under the contract of purchase; they were all absorbed, lost and merged into the legal title. (*James* v. *Morey*, 2 Cow., 247.) Any grantee of the premises from Jones, therefore, after the conveyance received by him from McKoon, would be a purchaser of the McKoon title, and subject to the provisions of the recording act in regard to the priority of conveyances previously recorded. (1 R. S., 756, § 1; id., 762, § 37; *James* v. *Morey*, 2 Cow., 248, 305.)

*William Gleason*, respondent in person. The defendant Gleason's equities are superior to the plaintiff's upon the facts of the case. His mortgage is entitled to precedence under the recording acts. (*Crain* v. *Turner*, 7 Hun, 357; 46 N. Y., 632; 31 id., 399; 55 id., 46, 47.) When Jones' deed was put on record he became entitled to hold as against plaintiff's unrecorded mortgage under the recording act. (*Thurman* v. *Anderson*, 30 Barb., 623–625; *Hetzel* v. *Barber*, 6 Hun, 541; 55 N. Y., 47; *Jackson* v. *Campbell*, 19 J. R., 283; *Fort* v. *Burch*, 6 Barb., 65; *Fisk* v. *Potter*, 2

Keyes, 74, 75, 78; 46 N. Y., 325, 329–332; *Dickinson* v. *Tillinghast,* 4 Paige, 220, 221; *Brown* v. *Volkening,* 64 N. Y., 82; 2 J. R., 510, 522, 524; 1 J. Chy., 398; *Delaney* v. *Stearns,* 66 N. Y., 162; 5 id., 66; 8 Cow., 260; 1 J. Chy., 394, 398.) Recording Schoonmaker's mortgage in 1869 was no notice to Jones and Gleason. (*Reed* v. *Mabble,* 10 Paige, 410; *Moyer* v. *Hinman,* 13 N. Y., 180–194; *Parks* v. *Jackson,* 11 Wend., 442; *Trustees, etc.* v. *Wheeler,* 61 N. Y., 89; *Young* v. *Guy,* 5 W. Dig., 399; 1 Barb., 392.) The deed and mortgage of Jones relate back to the contract, and in part are vitalized by it. (2 J. R., 511, 520; 1 J. Cas., 81; 3 Cow., 80.) Under the recording act any valuable consideration paid or furnished to the vendor makes the purchaser, without notice, a *bona fide* purchaser for a valuable consideration. The amount is immaterial. (*Wood* v. *Chapin,* 13 N. Y., 509; 7 Cow., 360; id., 518, 519, 523; id., 521; 2 Kent's Com., *465; Chitty on Cont. [5th Am. ed.], 29, 30; Story on Cont., § 429–431; 2 Bl. Com., *444; *Gilchrist* v. *Gouge,* Alby. Law Journal, April 5, 1879, p. 276; *Seward* v. *Jackson,* 8 Cow., 430; *Pickett* v. *Benson,* 29 Barb.; *Cary* v. *White,* 52 N. Y., 138–142.) Gleason was a *bona fide* purchaser for a valuable consideration, and upon the mortgage assigned to him being recorded, he was, under the recording act, a purchaser whose lien was prior to the plaintiff's. (3 R. S., 45, § 1 [5th ed.]; id., § 69; 63 N. Y., 269–276; 11 J. R., 534; 2 Lans., 475–476.) It is of no consequence whether Gleason ever recorded his assignment or not, unless McKoon should convey the same bond and mortgage to a *bona fide* purchaser, and the latter should put such second fraudulent assignment on record. (2 Barb. Chy.; 83–84; 3 Keyes, 174–178; *Crane* v. *Turner,* 67 N. Y., 437.) Gleason being a *bona fide* purchaser for value was not affected by notice or bad faith on the part of McKoon. (8 Cow., 260; 13 N. Y., 509, 518; 46 Barb., 211; 2 Hill, 650, 654; 4 Hun, 705; 3 id., 576; 9 Paige, 315, 318; 8 Wend., 620; 8 J. R., 137; 6 Paige, 322, 329; 12 J. R., 652.) The word purchaser as to recording assignments, refers to the

purchaser of the assigned mortgage, and not to some other purchaser of some other mortgage upon, or estate in the equity of redemption. (1 Abb. Ct. App. Decs., 295, 302; 3 Keyes, 174; 42 N. Y., 334, 348; 64 id., 220, 227.)

EARL, J. This is an action to foreclose a mortgage upon about two hundred and seventy-five acres of land, situated in Delaware county, which was executed by Dennis D. McKoon to Marius Schoonmaker, and by him assigned to the plaintiff. The facts, so far as they are material to the decision of the question submitted to us, were found at the Special Term of the Supreme Court as follows : Prior to September, 1856, Nicholas Elmendorf claimed to own the mortgaged lands ; and he entered into an executory contract with Samuel Inman for the sale to him of fifty-five acres thereof ; and Inman entered into possession of such parcel and made some improvements thereon. Subsequently, on the 24th day of September, 1856, the sheriff of Delaware county, by virtue of a sale upon execution issued upon a judgment recovered against Elmendorf, duly conveyed the mortgaged lands to Samuel Gordon and others, by a deed recorded September 26, 1856. On the 18th day of March, 1857, the grantees in that deed conveyed the same lands to the plaintiff in this action, by a deed recorded on the 4th day of April thereafter. On the 3d day of April, 1862, the State comptroller, by virtue of a tax sale, conveyed to the plaintiff the parcel of fifty-five acres and other parcels of land covered by the plaintiff's mortgage, by a deed recorded on the 2d day of June thereafter. Some time after the lands had been conveyed to the plaintiff (the precise time not appearing) Inman surrendered to him his contract for the fifty-five acres and received from him a new contract for the same ; and he continued in the possession of that parcel until he sold the same, by a written executory contract, to Samuel Jones, who entered into possession thereof and remained in possession, making some improvements thereon, until October 10, 1870. The date of this contract with Jones does not

appear. On the 1st day of June, 1866,— which was probably after the contract with Jones — Inman conveyed to the mortgagor, McKoon, all his interest in the fifty-five acres, by a deed recorded July 31, 1867. On the 13th day of June, 1868, the plaintiff conveyed to McKoon, by quitclaim deed, for a consideration, as expressed therein, of $500, the two hundred and seventy-five acres of land : and that deed was recorded November 28, 1868. On the same day of June, Marius Schoonmaker executed and delivered to McKoon a warranty deed of the same lands, for a consideration, as expressed therein, of $1,500, which deed was recorded February 24, 1873. For the purpose of securing the consideration of these two conveyances, McKoon, on the same day, executed the mortgage for $1,500, which this action was commenced to foreclose ; and this mortgage was recorded January 8, 1869. On the 27th day of October, 1868, Schoonmaker assigned this mortgage to the plaintiff, by an instrument in writing duly executed, acknowledged and delivered, but never recorded. On the 1st day of October, 1868, McKoon conveyed the fifty-five acres to Jones, for the consideration of $500· by a deed recorded December 1, 1868 ;· and at the same time, to secure the purchase money and the sum of $200, which Jones owed McKoon, the former executed to the latter a mortgage upon the same land for the sum of $700, which mortgage was recorded on the same day with the deed. Jones took his deed in good faith, believing that he was acquiring an unincumbered title to the land. On the 2d day of December, McKoon for value received sold and assigned that mortgage to the respondent, Gleason, who put his assignment upon record March 7, 1870. Gleason purchased the mortgage in good faith, believing it to be a first lien upon the lands, after having searched the records and finding no incumbrance there. Sometime prior to July 29, 1870, Gleason commenced an action to foreclose his mortgage, and on that day recovered a judgment of foreclosure against Jones and others, the plaintiff, however, not being a party. Gleason became

a purchaser of the fifty-five acres under that judgment, and received a deed thereof dated October 10, 1870, which was recorded May 4, 1877. It does not appear how McKoon came to take a quit-claim deed of Westbrook, and a warranty deed of Schoonmaker, of the same lands, at the same time; and it does not conclusively appear which of these grantors had the true title to the land. The title was evidently recognized as being in one or both of these grantors, and the mortgage was given to secure the consideration of both conveyances.

Upon these facts the question to be determined is which has priority of lien upon the fifty-five acres, plaintiff's mortgage, or the Jones mortgage assigned to Gleason? I think the courts below were in error in answering this question in favor of the Jones mortgage.

To repeat a few facts: The deed to Jones and the mortgage from Jones to McKoon were recorded December 1, 1868. The plaintiff's mortgage was recorded January 8, 1869. The assignment of the Jones mortgage to Gleason was recorded March 7, 1870, more than a year after plaintiff's mortgage was upon record.

The deed to Jones of the fifty-five acres did not give him a title free from plaintiff's mortgage, because, although he purchased in good faith and his deed was first recorded, he was not, within the meaning of the recording act, a purchaser for a valuable consideration. He paid nothing, and simply gave his bond and mortgage to secure the entire consideration payable at a future day. A purchaser for a valuable consideration, within the meaning of that act, is one who has paid the consideration of the conveyance or some part thereof, or has parted with something of value upon the faith of the conveyance. (3 Wash. on Real Property [3d ed.], 289; *Tourville* v. *Naish*, 3 P. Williams, 306; *Story* v. *Lord Windsor*, 2 Atk., 630; *Hardingham* v. *Nicholls*, 3 id., 304; *Webster* v. *Van Steenbergh*, 46 Barb., 211; *Weaver* v. *Barden*, 49 N. Y., 286; *Delancey* v. *Stearns*, 66 id., 157; *Dickerson* v. *Tillinghast*, 4 Paige, 215.)

There is nothing in Jones' prior relation to the land which improves his position. It does not appear that either he or Inman had paid anything upon the contracts which they held; nor does it appear to what extent they had made improvements upon the land. The contracts are not set out, and we have no information as to their terms. There is no finding that the Jones contract was in force at the time he took his deed from McKoon, or that at that time he had any valid claim to the land, or a conveyance thereof. There is no finding, and it cannot be inferred from any of the facts appearing, that the deed to him and the mortgage from him were given in performance of any prior contract. There is no allegation that they were, in Gleason's answer. The plain inference, from the lapse of time and other circumstances, is that the prior contract was either forfeited or abandoned. The mortgage was given for not only the whole purchase price, but for $200 in addition thereto; and according to Gleason's answer, the consideration agreed to be paid for the deed was twice the amount stipulated in the contract. The Jones title, as the case is now presented to us, must therefore rest entirely upon the deed from McKoon; and for the reason above stated, that deed is subordinate to plaintiff's mortgage.

It is not disputed that the mortgage from Jones, while McKoon held it, was subordinate to plaintiff's mortgage given by himself, and of which therefore he had full knowledge. The question now to be determined is whether by the assignment of this mortgage to Gleason, the latter obtained any better position for the enforcement thereof than his assignor had.

A mortgage under our laws is a mere chose in action; and aside from the force of the recording statute, an assignee thereof—so far as concerns his right as such to enforce the same—must be treated like the assignee of any other chose in action. What the assignor could have done while owner to enforce the same he can do, and no more. He takes the precise position of the assignor. He can obtain by the assign-

ment no greater or better right than the assignor had. While an assignee of a chose in action may now enforce the same in his own name, he must do it subject to all the defenses and equities which would have existed and affected it if the action had been in the name of the assignor, as it was originally required to be. The assignee of a mortgage takes it not only subject to all the equities existing between the parties to the instrument, but it is now too well settled to need further discussion that he takes it also subject to all equities which third persons could enforce against the assignor. (*Bush* v. *Lathrop*, 22 N. Y., 535 ; *Schafer* v. *Reilly*, 50 id., 61 ; *Trustees of Union College* v. *Wheeler*, 61 id., 88 ; *Greene* v. *Warnick*, 64 id., 220 ; *Crane* v. *Turner*, 67 id., 437.)

Unless, therefore, Gleason can claim some benefit from the recording statute, the priority of plaintiff's lien under his mortgage is established.

The recording statute (1 R. S., 756), provides, that " every conveyance of real estate within this State, hereafter made, shall be recorded in the office of the clerk of the county where such real estate shall be situated ; and every such conveyance not so recorded shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded." By subsequent sections it is provided that the word " conveyance" in this section shall embrace an assignment of a mortgage, and that the word " purchaser" shall embrace an assignee of a mortgage.

In order to protect a subsequent purchaser under this statute, there must be a conveyance to him in writing; and such conveyance must be first recorded. The mortgage from Jones to McKoon was not and could not become in any sense a conveyance to Gleason. That was a conveyance to McKoon, and as such was recorded. The only conveyance Gleason had was the assignment to him ; and if that may be regarded as a subsequent conveyance by McKoon of an

interest in the same real estate covered by plaintiff's mortgage executed by him, then it could have preference over that mortgage only by being first recorded; and it was not first recorded. It was, in effect, so held in *Fort* v. *Burch*, (5 Den., 187). In that case it was decided that where a junior mortgagee, with notice of a prior unrecorded mortgage, assigns his mortgage to one who has no notice, such assignee is entitled to preference only in case he records his assignment before the first mortgage is recorded. In *Jackson* v. *Van Valkenburgh*, (8 Cow., 260), it was held that such an assignee is entitled to the preference, although he has not recorded his assignment. But that case was decided upon the law as it existed before the Revised Statutes, when assignments of mortgages were not authorized to be recorded. As the law was then understood, in the absence of a recording statute, if a junior grantee or mortgagee, with notice, conveyed or assigned to an innocent purchaser, without notice, such purchaser would be protected equally as if no notice had ever existed: (*Jackson* v. *Given*, 8 J. R., 137; *Varick* v. *Briggs*, 6 Paige, 323; *Fort* v. *Burch*, 6 Barb., 60.) This seems to have been the rule of the common law, and was said in 5 Denio, (*supra*), to be "for the prevention of fraud, whereby an innocent purchaser is protected, though he take through a tainted title." In *Varick* v. *Briggs*, the chancellor speaking of the common law rule, said: "If a purchaser who has notice of a prior unregistered deed or of a fraud or trust or any other previous claim upon the estate purchased by him, afterwards conveys or mortgages the property to another who has no such notice, either actual or constructive, the latter is entitled to protection as a *bona fide* purchaser or mortgagee." But since the Revised Statutes, a *bona fide* purchaser of a legal or equitable interest in real estate, from a vendor charged with notice of a prior unrecorded conveyance, can obtain a better position than his vendor only by recording his conveyance first, and thus getting priority upon the record: (2 Wash. on Real Prop., 141; *Wood* v. *Chapin*, 13 N. Y., 509.) But there is a further

reason for disregarding the authority in this case of *Jackson* v. *Van Valkenburgh*. When that case was decided, the law holding that a mortgage for the purpose of assignment was a mere chose in action had not been as broadly laid down as now. Now, as shown above, a mortgagee cannot convey by assignment any better title or greater interest, or give any better position to a *bona fide* assignee than he himself has.

We have assumed that by the assignment of the Jones mortgage to Gleason, for the purposes of the recording statute, he took not only a conveyance of the mortgage, but a conveyance of an interest in the land; so that he became under that statute a subsequent purchaser of an interest in the land covered by the mortgage. But there is authority for holding that an assignee of a mortgage under that statute is a mere purchaser of the mortgage; and that the only purpose of recording such assignments is to regulate the relation to each other of successive assignees of the same mortgage: (*Greene* v. *Warnick,* 64 N. Y., 220; *Crane* v. *Turner*, 67 id., 437.) If this be the correct construction of the statute, then Gleason can have no benefit from the recording statute, because he is not a subsequent assignee of the same mortgage held by the plaintiff.

Plaintiff lost no right by not recording his assignment. There was no subsequent conveyance of the same mortgage; and so far as Gleason can claim to be a subsequent purchaser of an interest in the fifty-five acres, by virtue of his assignment, his conveyance was subsequent upon the record to plaintiff's mortgage : (*Purdy* v. *Huntington*, 42 N. Y., 334; *Campbell* v. *Vedder*, 1 Abb. Ct. of App. Dec., 295; *Gillig* v. *Maass*, 28 N. Y., 191.)

The conclusion thus reached does not work extraordinary hardship. A grantee or mortgagee of lands may always be subjected to loss by a failure to record his conveyance before the record of a prior conveyance which was unrecorded when he took his. In such cases he loses in the race of diligence which the recording statute requires. One who purchases

mortgages always does so at his peril, like one who purchases other non-negotiable choses in action. He must inform himself accurately as to the title and value of the security he buys ; and if he is deceived, he must look to the responsibility of the seller.

The judgments of the Special and General Terms, so far as appealed from by plaintiff, must be reversed and new trial granted, costs to abide event.

RAPALLO, J. The claim of the defendant to priority by virtue of the recording act has been so fully discussed in the opinions of DANFORTH and EARL, JJ., that it would be superfluous to say more upon that subject, than that I feel constrained by the language of the recording act to concur in the conclusion reached by EARL, J., that in order to place himself in a position to assail the plaintiff's mortgage on the ground that it was not recorded, it was incumbent upon the defendant to show, not only that he was a *bona fide* purchaser for a valuable consideration and without notice, but that his conveyance was first recorded. He did show that he was such *bona fide* purchaser, and he would have been protected by the statute had he taken the precaution to place his assignment upon record before the plaintiff's mortgage was recorded ; but unfortunately he omitted that precaution. It is true that the failure on his part to record his assignment did not mislead or injure any one, while the failure of the plaintiff to record his mortgage did mislead the defendant, and cause him to purchase and pay for the Jones mortgage on the supposition that it was a first lien. If it were possible to construe the statute so as to protect the defendant we should feel disposed so to do. But its language is so clear as to leave no room for such a construction. His title, so far as it rests upon the rights acquired under the assignment of the Jones mortgage, cannot therefore be sustained by virtue of the recording act.

The findings of the trial judge, however, disclose other grounds upon which the defendant Gleason is, or at least,

may be, entitled to hold the fifty-five acres free from the plaintiff's mortgage.

By his purchase on the foreclosure of the Jones mortgage, the defendant became vested with all the title which Jones had, and if for any reason the title of Jones was not subject to the plaintiff's mortgage, the title of the defendant Gleason is equally free.

The findings show that in the year 1857, when the plaintiff purchased the 275 acres (of which the fifty-five acres in question are a part), these fifty-five acres were in the possession of one Inman, who held them under a contract of sale made by Nicholas Elmendorf, through whom the plaintiff derived his title. Inman had made improvements on the land, and after the plaintiff had purchased it he made a new contract with Inman for the same fifty-five acres. Inman surrendering his old contract. Inman remained in possession after this until, by a written executory contract, he sold the same land to Samuel Jones, who entered into possession and made further improvements and remained in possession till October, 1870. On the 13th June, 1868, the plaintiff by a quit-claim deed conveyed the 275 acres to McKoon, and on the same day Morris Schoonmaker executed a deed of the same premises to McKoon, who at the same time gave to Schoonmaker a purchase-money mortgage covering the whole 275 acres, which mortgage was afterwards assigned to the plaintiff and is the mortgage now in suit.

After this conveyance to McKoon, but before the mortgage given by him had been put on record, viz.: on the 1st of October, 1868, McKoon conveyed to Jones the fifty-five acres which he held under his contract with the plaintiff, and Jones gave back to McKoon his bond secured by a mortgage on the same premises for $700, which is the mortgage under which the defendant Gleason claims. Jones' deed and mortgage were recorded on the 1st of December, 1868. Jones had no notice of the mortgage which had been given by McKoon and that mortgage was not recorded until January 8, 1869.

The trial judge finds that Jones took his deed and gave the bond and mortgage in good faith, believing that he was acquiring an unincumbered title to his fifty-five acres, and that the whole purchase price of the land was secured by the bond and mortgage

Afterwards on the 2nd December, 1868, and before plaintiff's mortgage had been recorded, McKoon sold and assigned this bond and mortgage to the defendant Gleason for value. Gleason purchased them in good faith, believing the mortgage to be a first lien, after having searched the records and found no incumbrances on the property. He omitted however to record his assignment until March, 1870, and in the meantime, January, 1869, the plaintiff put his mortgage on record.

In 1870 Gleason foreclosed his mortgage and purchased at the foreclosure sale and received the sheriff's deed. The plaintiff was not a party to the foreclosure suit.

From the facts found it appears that when McKoon purchased the 275 acres, Jones was a vendee in possession of the fifty-five acres in question, under a contract which had precedence in point of time over the title of McKoon, and consequently over the mortgage, given by McKoon to the plaintiff. That Jones as well as his predecessor had made improvements upon the land. The case does not show that this contract had been in any manner abrogated. Assuming it to have been in force at the time of the conveyance by McKoon to Jones, Jones at that time held the equitable title to the land, subject only to the payment of the amount due on his contract, and was entitled, on paying or securing that amount, to a conveyance free from any lien created either by the plaintiff or McKoon. Such a conveyance could have been compelled by him, by resort to a court of equity. The plaintiff and McKoon had full notice of the rights of Jones, and when the plaintiff conveyed to McKoon, the title of McKoon was subject to Jones' contract. So also was the mortgage given back by McKoon to the plaintiff, which is the mortgage in question. That mortgage consequently was

not enforceable against Jones' equitable title. As between McKoon and the plaintiff, the latter was entitled, if necessary to his security, to pursue the purchase money received by McKoon, or the mortgage given therefor, but he had no lien upon the land superior to the title of Jones.

When Jones received his deed from McKoon, and when he placed that deed on record, the plaintiff's mortgage had not been recorded and Jones had no notice of it. If the conveyance was made by McKoon in fulfillment of the contract, I can see no reason why the legal title of Jones should not, for the purpose of determining the question of the lien of the plaintiff's mortgage, relate back to the equitable title of Jones, and be thus freed from the lien. A court of equity would doubtless have so decreed had Jones been put to his action for specific performance. But the General Term held that Jones, by accepting the deed from McKoon, lost all his equitable rights under his contract as vendee in possession; that they became merged in the legal title, and he could claim nothing except what he derived from that deed. Assuming this position to be sound, then clearly Jones was protected by the recording act, against the plaintiff's mortgage. He was a purchaser in good faith without notice of the mortgage, and his deed was first recorded. The only ground upon which it was held below that he was not protected by the recording act, was that he paid the whole of the purchase price by his bond and mortgage, and did not part with anything of value, and therefore he did not come within the statutory requirement of a purchaser for a valuable consideration. But if by accepting the deed he parted with his equitable title to the land, which had precedence of the plaintiff's mortgage, and with his right to his improvements, etc., then he was, within all the cases, a purchaser for value, and entitled on that ground to priority.

If the court had found in favor of the defendant Gleason on these grounds we should deem the facts found sufficient to sustain the conclusion, for we should, in accordance with settled rules, make all intendments necessary to sustain the

finding.   For instance, as nothing to the contrary appears, we should assume that the contract under which Jones held was still in force, or that Jones had equitable rights thereunder when McKoon conveyed to him, and that the conveyance was made in performance of that contract.   But the court found against Gleason on the question of Jones' title, and based the judgment wholly on the rights of Gleason under his assignment of the Jones mortgage, and the recording act.   We can therefore make no intendments in support of the equitable title of Jones or his position as a *bona fide* puchaser for value, but on the contrary the intendments must be the other way, and such as tend to support the conclusions of the referee.   The consequence is that as the judgment cannot be sustained on the ground upon which it was placed in the court below, it must be reversed, and a new trial ordered, and on such new trial the rights of Jones to priority under his contract, or as a purchaser for value, may be more fully considered and determined.

Judgments of General and Special Terms should be reversed and new trial ordered, costs to abide the event.

DANFORTH, J. (dissenting.)   On this appeal no questions are material except such as arise between the plaintiff and the defendant Gleason upon the following facts :

On the 1st day of December, 1868, one Dennis McKoon had a clear title of record to 275 acres of land situated in Delaware county.   There was however outstanding his bond for $1,500 secured by a mortgage upon these premises, not of record, given by him to one Schoonmaker.   McKoon by deed recorded December 1, 1868 conveyed fifty-five acres part of the 275 to one Samuel Jones who took the deed in good faith, without notice of the mortgage above referred to, and under the belief that he was acquiring an unincumbered title to the land.   At the same time he gave McKoon a mortgage for $700, of which $500 were for the purchase money of the fifty-five acres, and $200 for a pair of oxen. It was recorded on the 1st of December, 1868.   On the 2d

of December, 1868, Gleason having first searched the records purchased of McKoon this mortgage for a valuable consideration, in good faith and without notice of the mortgage given by McKoon and believing the Jones mortgage to be a first lien upon the premises embraced in it. On the 27th of October, 1868, the McKoon mortgage was assigned to Westbrook; the mortgage was not recorded until the 8th of January, 1879. On the 29th of July, 1870, Gleason foreclosed the Jones mortgage — the assignment of the McKoon mortgage had not been recorded — Westbrook was not made a party; whether Schoonmaker was or not does not appear. Upon the sale under his foreclosure Gleason became the purchaser of the premises and received a deed therefor October 10, 1870, under which he and his grantees have since occupied the premises.

This action is brought for the foreclosure of the McKoon mortgage. Upon the trial the court found the facts above stated and held that the rights of Gleason acquired under the Jones mortgage were entitled to priority over those of the plaintiff under the McKoon mortgage, and the correctness of that decision is the question before us. The appellant's counsel contends that it is not, and his argument would be of great weight as to one branch of this case if there was either any defect or legal taint in the Jones mortgage, or any equity outside of the limit of the recording act, in favor of the McKoon mortgage as against the other. The authorities cited by him apply to cases within one or the other of these classes. They are as follows *Schafer* v. *Reilly* (50 N. Y., 61) was a controversy between a mechanic's lienor and a mortgagee. The mortgage was given without consideration, to be sold by the mortgagee for the benefit of the mortgagor — and was recorded — after the record the mechanic's lien attached — and after that the mortgage was sold — the mechanic's lien was given the preference, ALLEN, J., saying, "there is no question here under the recording act" — and adds, * * * " doubtless a *bona fide* grantee without notice of a prior unregistered deed may hold although

his grantor may have taken title with full knowledge of such deed," and that this remark applies to mortgagees and assignees of mortgages is apparent not only from the context, but the cases cited by the learned judge, among others *Jackson* v. *Van Valkenburgh* hereafter referred to.

In *Greene* v. *Warnick* (64 N. Y., 220), the question was as to the priority between two mortgages. Each had been executed to secure portions of purchase-money to be paid for the premises described in them—" upon an agreement between the mortgagees that the mortgages should be equal liens, that neither was to have priority over the other and that both were to be recorded at the same time,"— one was recorded first — but the court said "although first recorded it was not a subsequent conveyance and therefore these two mortgages executed at the same time are not within the statute," and they " must share equally in the surplus money " which was in dispute. The equity which prevailed was the result of an agreement between the mortgagees, and the court held that the assignees were bound by the agreement. The equity did not rest upon the simple fact of notice. *De Lancey* v. *Stearns* (66 N. Y., 157), is to the effect that where a mortgage is taken without value paid, the taker is not a *bona fide* purchaser within the meaning of the recording act and that an assignee of such a mortgage stands in no better position than the mortgagee his assignor, as regards a prior unrecorded mortgage,— but that case recognizes the distinction on which the respondent here prevailed, the court saying "although on the question of notice the *bona fide* assignee of the mortgage for value may stand in a better position than the mortgagee, she cannot on the question of the consideration of the mortgage either as between herself and the mortgagor, or third parties," citing in support of the first part of the proposition, *Jackson* v. *Van Valkenburgh* (8 Cowen, 260), and *Fort* v. *Burch* (5 Denio, 187), and as to the last part, the case of *Schafer* v. *Reilly* (*supra*) ; and so far as it goes supports the respondent here — because in the case before us the question relates only to the effect of

notice. *Trustees of Union College* v. *Wheeler* (61 N. Y., 88), presented no question under the recording act, nor did it turn upon the question of priority between successive mortgages on the same real estate. It related to equities between the mortgagee and certain purchasers by contract of portions of the mortgaged premises, and the question was whether as to them the assignee of the mortgage stood in any better position than his assignor, the mortgagor. *Crane* v. *Turner* (67 N. Y., 437), affirming S. C. (7 Hun, 357), where the facts are somewhat more fully reported, and in both courts the decision is put upon the priority given to the plaintiff's mortgage by the recording act. The Supreme Court say " the plaintiff's mortgage was duly recorded as against the defendant Turner claiming under the same title " and upon appeal this court said, " nor is there any ground for the position of the defendant's counsel, that under the recording act the plaintiff's mortgage was not notice to the defendant although recorded, because the record shows a perfect claim of title sustaining the plaintiff's mortgage," and the opinion closes with these words, " as the recording act does not aid the defendant and no ground is shown upon which he is entitled to priority it necessarily follows that there was no error." The remaining case cited by the appellant, *Davis* v. *Bechstein* (69 N. Y., 440), is foreign to any question before us. It involved no claim of priority between successive mortgages, but determined that a bond and mortgage executed without consideration and invalid between the parties, could not by the unauthorized act of the mortgagee be rendered valid in the hands of his assignee against the mortgagor. There is no doubt that the purchaser of a chose in action must abide the case of the person from whom he buys. And it is upon that rule that the cases relied upon by the appellant and above referred to stand. The respondent's case does not infringe it, nor interfere with *Bush* v. *Lathrop* (22 N. Y., 535), which stands upon the same doctrine and was also referred to in several of the above cases. It applies to cases where there is some inhe-

rent weakness in the security, as want of consideration,
or usury, or where there is an agreement outside the mort-
gage affecting its priority or some other circumstance from
which an equity arises against the enforcement of the whole
or some part of the security, or where an assignment is in
terms absolute but was in fact conditional, or for the whole
amount appearing due when in fact it was for less. This
distinction is insisted upon by Judge DENIO in *Bush* v.
*Lathrop*. The thing in controversy in that case was a bond
and mortgage, claimed by the defendant by assignment
through Noble's assignee ; Bush was Noble's administrator,
and after stating the general doctrine which upholds the
equities of third persons as well as those of parties to the
instrument, the learned judge says : " It is necessary to
add that I do not consider that the assignee stands in place
of the assignor in every respect in all cases. The sugges-
tion made in the earliest of the cases in this State, that the
assignee if a *bona fide* purchaser without notice was not
prejudiced by the notice of his assignor was well founded
and has since been repeatedly recognized." (Citing among
others *Jackson* v. *Van Valkenburg* — and adding) : " *It
was not notice* which prejudiced the title of the parties
under whom the defendant claimed, but the fact that Noble,
the last absolute owner of the bond and mortgage never
parted with his title, except on condition that it should be
returned to him on payment of a comparatively small sum
of money. The defendant claimed under that conditional
assignment, and though he may not have been aware
of the condition he is nevertheless bound by it." So in
*Greene* v. *Warnick* (*supra*), there was an agreement at
the time of the execution and delivery of the two mort-
gages that neither should have priority over the other ; and
the assignee was held subject to that agreement and bound
by it. So if the agreement had been that one of the two
mortgages should have priority over the other, no doubt
the assignee would have been bound by it, for such an agree-
ment is valid and would be enforced notwithstanding the

other was first recorded. (*Jones* v. *Phelps*, 2 Barb. Ch., 440; *Freeman* v. *Schroeder*, 43 Barb., 618.) For the reason stated in *Bush* v. *Lathrop*, and before referred to, the appellant's case does not permit the application of the principle upon which these cases stand. The Jones mortgage was free from defect, it was founded upon a good and valuable consideration as between the parties; valid in the hands of the mortgagee but not enforceable by him to the prejudice of rights acquired through the earlier mortgage executed by him upon the same premises. This disability, however, was personal to himself. He was precluded from asserting any right which would impair the undertaking he had given, or the value of the mortgage he had executed as security for its performance. It is as if a third party had notice of the earlier mortgage and the consequence is the same and not greater. He was under no obligation not to put his mortgage on record, and having done so, the statute which permitted it, and the assignment of the mortgage are both to be considered in determining the defendant's rights. The plaintiff relies upon notice of his mortgage only. But as to this the defendant stands upon the statute; and thus his position is different from that of the assignor, to the latter the statute has no application—for he had actual notice— the assignee had not. He ascertained that the Jones mortgage was recorded, and the omission of the plaintiff to record his mortgage created an assurance as if by statute that it did not exist. The defendant had not constructive notice, and the priority to which the plaintiff's mortgage would have been otherwise entitled is lost. (*Peabody* v. *Roberts*, 47 Barb., 94; *Tuttle* v. *Jackson*, 6 Wend., 213.) Such is the plain import of the statute (R. S., vol. 1, chap. 111, pt. II, p. 756), which declares that every unrecorded "conveyance shall be void as against any subsequent purchaser in good faith for a valuable consideration of the same real estate or any portion thereof whose conveyance shall be first duly recorded." (§ 1.) A "conveyance" includes a "mortgage." (§ 38, p. 762.) An "assignee

of a mortgage" is a "purchaser." (§ 37, p. 762.) Both the plaintiff and the defendant are within this statute "purchasers." They hold by "conveyances." The defendant's mortgage was first recorded — his payment of consideration, good faith and want of notice are established. He is directly within the protection of the statute. Upon authority the conclusion is the same. In *Jackson* v. *Van Valkenburgh* (8 Cow., 260), above referred to, decided in 1828, it appeared that McKoon was the owner of certain premises and gave a mortgage thereon to the defendant in 1821. It was not recorded until October 29, 1825. In 1823 McKoon gave a mortgage to Fuller & Pettree ; they were expressly informed of the preceding mortgage. Their mortgage was recorded January 28, 1823. On the 23d of July, 1825, it was assigned for value to the plaintiffs who had no notice of the first mortgage. In an action of ejectment against the first mortgagee, the assignees recovered, the court holding that they were not affected by notice to their assignors. I am not aware that this case has been questioned ; it has on the other hand been frequently recognized and followed : (*Fort* v. *Burch*, 5 Denio, 187; *Corning* v. *Murray*, 3 Barb., 652; *Webster* v. *Van Steenbergh*, 46 id., 215; *Bush* v. *Lathrop*, 22 N. Y., 549.) *Williamson* v. *Brown* (15 id., 365) is cited in *De Lancey* v. *Stearns* (66 id., 161), but shown to be inapplicable to the facts then before the court because the mortgage under which the claim was made, was not given for value nor the party claiming under it a *bona fide* holder within the statute. The respondent is, however, not only the assignee of the mortgage, but a purchaser of the mortgaged premises. As such his rights are the same as if he had not been the owner of the mortgage or a party to its foreclosure. (*Wood* v. *Chapin*, 13 N. Y., 519.) He bought on the foreclosure of the Jones mortgage. His title is founded upon it (*People* v. *Beebe*, 1 Barb., 388; *Butler* v. *Viele*, 44 id., 166; *Packer* v. *R. and S. R. R. Co.*, 17 N. Y., 292; *White* v. *Evans*, 47 Barb., 185), and by relation may be deemed to have been acquired at the time of the

delivery of the mortgage by Jones, which must have been as early as the date of record, December 1, 1868, and his rights are to be determined by the records in the clerk's office, as they existed on the 2d of December, 1868.

With knowledge of what facts, affecting Jones' title and the mortgage, is he chargeable ? Jones was in possession of the premises under a deed from McKoon who, as then appeared from the records, had a clear and unincumbered title — no mortgage against the property, except the one executed by Jones. By the sale on the foreclosure the mortgage lien has become a title. There is no principle of law or equity which subjects it to the plaintiff's mortgage. It is in accordance with equity that as between himself and the defendant the plaintiff should suffer the consequences of his own negligence in omitting to record his mortgage, and that he should not now be permitted to the defendant's prejudice to assert a priority for his mortgage which, by the express provision of law, is, because unrecorded, void as against one standing in the position of the defendant. (1 R. S., chap. 111, tit. 5, pt. 2, § 1, p. 756.) It is true that the assignment to the defendant was not recorded until after the plaintiff had placed his mortgage on record, but that is immaterial. The registry of the Jones mortgage serves the defendant. This was the doctrine in *Hooker* v. *Pierce* (2 Hill, 650) where speaking of certain conflicting claims to land arising on different conveyances the court say, " the registry of the grantor's deed enures in the nature of things to the benefit of all those who claim under him. They become entitled to use all his habiliments of title as their own. They might acquire a better title than he but cannot be considered as having taken less. He being without constructive notice, they are not affected. It is enough that they personally act in good faith as the jury found them to have done. This finding frees them from all imputation of notice." The rule and the reason of it apply here. Referring to the title acquired by the purchaser on foreclosure DENIO J , says, " where legal title is concerned a mortgage, which for many other purposes, is a mere chose

in action is a conveyance of the land, the interest remaining in the mortgagor is an equity, the foreclosure cuts off and extinguishes that equity and leaves the title conveyed by the mortgage absolute. (*Packer* v. *R. and S. R. R. Co., supra*) and to the same effect is the statute relating to conveyances on foreclosure. (2 R. S., 192, § 158; p. 72, Pt. 111, chap. 2, art. 6.) Gleason by the assignment of the Jones mortgage became a purchaser *sub modo, Frisbee* v. *Thayer* (25 Wend., 399); *James* v. *Johnson* (6 John. Ch. 417). He acquired the interest in the real estate which the mortgagee took by the mortgage and he is to that extent a purchaser not only of the mortgage but of the interest which is conveyed by it (*Belden* v. *Meeker*, 2 Lans., 470), and as he became such in good faith and for a valuable consideration he takes his title under that mortgage unaffected by the mortgage, then unrecorded which the plaintiff now seeks to enforce. I am thus led to the conclusion that the defendant is protected by the recording act from the consequences of notice to the mortgagee and no other defect in his title is suggested.

CHURCH, Ch. J., MILLER and EARL JJ., concur with RAPALLO, J.; DANFORTH, J., concurs with RAPALLO, J., as to effect of Jones' deed, but dissents as to recording act.

Judgment reversed.